UNITED STATES of America, Appellant,

v.

WARWICK MOBILE HOMES ESTATES, INC. and Thomas J. Lyttle, Appellees.

No. 76–1901.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 16, 1977.

Decided June 13, 1977.

John C. Hammock, Atty., Dept. of Justice, Washington, D.C. (William B. Cummings, U. S. Atty., Alexandria, Va., J. Stanley Pottinger, Asst. Atty. Gen., Walter W. Barnett, Atty., Dept. of Justice, Washington, D.C., on brief), for appellant.

H. Duncan Garnett, Jr., Newport News, Va. (Herbert V. Kelly, Jones, Blechman, Woltz & Kelly, Newport News, Va., on brief), for appellees.

Before WINTER and HALL, Circuit Judges, and WILLIAMS,* District Judge.

GLEN M. WILLIAMS, District Judge:

This is the second appeal by the United States in this case. The United States originally instituted this action pursuant to Section 813 of the Fair Housing Act, 42 U.S.C. § 3613, on February 20, 1974. The complaint alleged that defendants, Warwick Mobile Home Estates, Inc. and Thomas J. Lyttle, its President, had "pursued a policy and practice of discriminating against persons on the basis of race and color with respect to the sale or rental of dwellings" in violation of the Fair Housing Act. The United States sought relief in the form of a decree enjoining the defendants from committing further violations and requiring affirmative action to remedy the effects of the defendants' past discriminatory policies and practices.

Trial was held on November 20, 1974. The district court concluded, in a memorandum opinion, that it found no evidence that defendants ever refused to rent trailer space to any black who met the eligibility

* United States District Judge, Western District of Virginia, sitting by designation.

requirements of the park. The court did find, however, that the defendants did not want blacks and that park employees had been instructed to process the application of blacks differently from those submitted by whites. There was testimony of a former rental clerk, Mrs. Mosier, employed by Warwick from 1968 to 1971, that she was instructed to retain a stack of applications, some of which consisted of fictitious names, to display to black applicants to indicate that trailer space was unavailable. The district court thus ruled that the evidence was sufficient to show a pattern and practice of resistance to renting to blacks, although the court noted that the policies of resistance had changed recently, because Warwick had disposed of the trailer sales business.

Once the court found a discriminatory practice to exist, it had to decide what type of relief it would grant to the United States. In this connection, the defendants filed a motion on December 18, 1974, asking the court to limit relief to the entry of a declaratory judgment and to refrain from issuing an injunction. On January 16, 1975, in a second memorandum opinion, the district court found "no reason to believe that defendants will not fully comply with the law" and "no reason to issue an injunction." The court characterized the violations of the Statute as very limited in nature, and stated that many of the refusals to rent trailer space resulted from the defendants' desire to hold back spaces which could also be rented to one who purchased a trailer from defendants. Now that the defendants have disposed of the trailer sales business, the court added, "blacks are now permitted equal access to the trailer park." (App. 149) Thereupon, the court entered judgment denying injunctive relief and the United States appealed.

In its decision, dated March 18, 1976, this court reversed the district court's judgment refusing to grant the relief requested by the government and remanded the case with directions for the entry of injunctive relief. While this court ruled that there was sufficient evidence to support the trial judge's conclusion that the pattern or practice of discrimination had recently changed, this court found that lingering vestiges of discrimination remained which could only be eliminated through an injunction. On remand, the district court entered the decree proposed by the defendants, which stated that defendants have been found to have engaged in a pattern or practice of resistance to equal housing opportunity. The decree permanently enjoins defendants from: refusing to show, sell, rent or negotiate for the sale or rental of, a dwelling, because of race or color; representing falsely that a dwelling is not available on account of race or color; discriminating in the terms, conditions, or privileges of sale or rental; and advertising discrimination based on race or color. Further, the court directs that the foregoing provisions be incorporated in a program of instructions to defendants' employees, who would also be given a copy of the Fair Housing Act. Under the terms of the decree, the agents and employees of the defendants would be required to follow the above mentioned instructions and would be subject to disciplinary action for failure to comply with the decree. The decree also provides that the court shall retain jurisdiction for all purposes. While the District Court's injunction does not specifically require the keeping of records, it is obvious that the court contemplated that Warwick would maintain records to prevent recurrent violations. The order reads as follows: "The defendant's keeping of racial records for the purpose of complying with this decree shall not be considered discriminatory."

The appellant, United States, now complains that the district court committed error because it refused to enter the plaintiff's proposed decree, which, in appellant's view, contains better safeguards for preventing future violations and provides more adequate affirmative relief to correct the lingering effects of past discriminatory practices. The decree proposed by the United States provides, initially, for the same relief as defendants' decree, but also seeks to impose on appellees numerous additional obligations. In addition to the relief

mentioned previously, appellant seeks to require Warwick to adopt and implement an extensive advertising program which includes, but is not limited to, the following: display of a fair housing poster; advertising through the media of the company's policy of nondiscrimination as well as written notification of same to military installations in Warwick's vicinity; and providing information to each person inquiring as to a mobile home purchase that lots will be made available at Warwick Mobile Home Estates. The plaintiff's proposed decree also would require that defendants formulate written objective non-racial standards and criteria for the processing and approval of mobile home site applications, to be implemented without regard to subjective factors such as race or color. The plaintiff United States also demands that defendants submit a detailed report indicating steps taken toward implementing this decree's provisions. This phase of the affirmative action program would place added responsibility on appellees to file periodic reports providing relevant information on all persons applying at Warwick and stating the reasons for approval or disapproval of their applications. Finally, the plaintiff's proposed decree provides the United States with the opportunity to inspect and copy all records of the appellees relative to the rental of dwellings.

The only issue in this case is whether the district court failed to enter an appropriate decree that complied with this court's prior order remanding the case for the entry of injunctive relief. In this connection, we are reminded that this court placed confidence in the district court to fashion relief designed to cure "the lingering vestiges of discrimination" at Warwick Mobile Home Park. The court is now convinced that the district court did not abuse its discretion by refusing to grant all of the injunctive relief requested by the appellant.

■ The primary purpose of an injunction in Fair Housing Act cases is to prevent future violations of the Act and to eliminate any possible recurrence of a discriminatory housing practice. Prior to granting injunctive relief, the court must determine that there exists some cognizable danger of recurrent violations. The court may consider a number of factors in deciding whether injunctive relief is appropriate, or in fashioning relief under a decree of injunction once the court has determined that such a remedy is necessary. The factors to be considered are the bona fide intention of the party found guilty of discrimination to presently comply with the law, the effective discontinuance of the discriminatory practice(s) in question, and, in some cases, the character of past violations. *United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *Pullum v. Greene*, 396 F.2d 251 (5th Cir. 1968); *United States v. Atkins*, 323 F.2d 733, 739 (5th Cir. 1963).

■ Naturally, consistent and extreme forms of discrimination would be a significant factor to consider in determining the likelihood of future violations and thus the corresponding need for injunctive relief, as well as the absence of any persuasive indications that there has been a cessation of a pattern or practice of resistance to blacks. *United States v. West Peachtree Tenth Corp.*, 437 F.2d 221, 228 (5th Cir. 1971); *United States v. Atkins, supra*, at 739. Where the violations are particularly limited in nature, however, the court must carefully adhere to its previously announced admonition against imposing overly burdensome decrees on defendants. In *United States v. Hunter*, 459 F.2d 205 (4th Cir. 1972), we elaborated further on this issue by stating that:

> Established principles of equity dictate that in considering whether to grant injunctive relief a court should impose upon a defendant no restriction greater than necessary to protect the plaintiff from the injury of which he complains.

459 F.2d at 219; see *McClintock on Equity* § 146 (2d Ed. 1948).

As stated previously, the district court found that the evidence of statutory violations by appellees was very limited, that there was no evidence that eligible blacks had ever been refused trailer space, but

that the evidence did show some irregularities in the manner in which the company processed the applications of blacks and that this was sufficient to constitute an unlawful "pattern or practice" within the meaning of the Act. The court ruled, however, that this condition had changed recently because Warwick had now disposed of the trailer sales business out of which most of the violations had arisen. "Blacks are now permitted equal access to the park," the court stated.

■ In the United States' prior appeal, this court specifically upheld the district court's findings of fact concerning the change and abatement of the discriminatory housing and rental policies at Warwick. In view of the change in policy and the limited nature of past violations, we find that the district court properly worded the injunction to prevent the recurrence of violations and to eliminate the vestiges of discrimination at the mobile home park, while simultaneously avoiding an undue burden on appellees. The principal violation of the Housing Act cited by the government and the court was the manner in which Warwick employees were instructed to handle black applicants. There was testimony by one witness that she was instructed to keep available a stack of applications, many of which contained fictitious names and addresses, to show to blacks to indicate that there was a surplus of applications for mobile home sites. Now, under the terms of the district court's decree, all Warwick employees are instructed in and required to comply with the standards enunciated in the Fair Housing Act. They are now specifically prohibited from making any false representations to blacks concerning the availability or non-availability of lots. Should an employee fail to conform to such requirements, then he or she would face disciplinary action. Moreover, the district court has retained jurisdiction to ensure that appellees obey the Fair Housing Act in all respects.

We are aware, of course, that the decree entered by the district court contains no provisions requiring the appellees to submit periodic reports on their rental activities, but we are equally confident that such a requirement is unnecessary in view of the changed conditions at the park and the lower court's finding that the appellees had demonstrated a bona fide intention to comply with the law. The decree of injunction contains adequate safeguards to prevent future violations and to remedy the vestiges of prior discrimination.

It is nevertheless argued by the appellant that the district court's final order does not provide affirmative relief sufficient to eliminate the effects of past discrimination. The appellant asks that this court adopt its proposed decree, which is the same as that approved by the Fifth Circuit in *United States v. West Peachtree Tenth Corp., supra.* While nothing in this decision is intended as criticism of that case, the court notes that the Fifth Circuit has not set forth the only permissible type of decree that can be entered in Fair Housing Act cases. Factual situations may differ and the relief to be granted can reasonably vary from case to case.

The government's proposed decree, as applied to the facts of this case, would impose an extensive program of advertising, reporting and record-keeping on the company. We believe that such relief, if granted, would place a difficult, expensive and time-consuming burden on the appellees, who are attempting to operate a business with only limited manpower and resources. Moreover, the government's demands for additional affirmative action are totally out of proportion with the present risk of recurrent violations. Our decision might be different if the court were faced with a consistent and extreme form of discrimination, and a strong likelihood of future violations of the Act, but the district court has already found that the past violations were limited in nature and that appellees will presently comply with the law.

The judgment of the district court is hereby

*AFFIRMED.*

WINTER, Circuit Judge, dissenting:

In the prior appeal, we sustained the district court's finding that defendants had followed in the past a pattern and practice of resistance in renting lots for mobile homes to blacks. While we declined to say that, whenever there was a pattern and practice of past racial discrimination, injunctive relief should always be granted upon request, we concluded that in the instant case present effects of past discrimination which might require substantial correction still existed:

> It is reasonable to assume that the past discrimination inhibited blacks from applying at Warwick's park, as evidenced by the small number of black applicants. Although Warwick's discriminatory acts may have changed, or even ceased, "as of recent" it is probable that without the *affirmative* relief sought by the Government, blacks will continue to be inhibited from applying at a park identified with past racial discrimination. As long as such vestiges of prior discrimination remain *affirmative* injunctive relief is appropriate and should be granted. (Emphasis added.)

*United States v. Warwick Mobile Home Estates, Inc.,* 537 F.2d 1148, 1150 (4 Cir. 1976).

On remand the district court, without hearing, entered the decree from which this appeal is taken solely on the record before us in the present appeal. Thus, in the present appeal, the sole issue for decision is whether the decree entered by the district court on remand is consistent with the views we expressed. I think that it was not, and I respectfully dissent from a contrary holding.

## I.

The decree entered by the district court recites its previous finding that the defendants have engaged in a pattern or practice of resistance to equal housing opportunity, and it permanently enjoined them from (1) refusing to show, sell, rent, volunteer information about, or negotiate for the sale or rental of a dwelling because of race or color; (2) representing falsely that a dwelling is not available on account of race or color; (3) otherwise denying a dwelling to anyone because of race or color; (4) discriminating in the terms, conditions or privileges of sale or rental on account of race or color; and (5) advertising a preference, limitation or discrimination based on race or color. The decree requires that there be established a program of instructions to defendants' employees and that they be subjected to disciplinary action for failure to comply with the decree. There is a statement that the court shall retain jurisdiction and that "defendants' keeping of racial records for the purpose of complying with the decree shall not be considered as discriminatory." With respect to the latter, *there is no provision in the decree requiring the maintenance of such records;* and, from their history of past dealings, I cannot rest secure in a belief that these defendants will be so enlightened that they will maintain them voluntarily.

The decree requested by the government embodied all of the foregoing provisions, but it also asked that defendants adopt and implement an affirmative fair housing program to include: (1) display of a fair housing poster; (2) advertising through the media and promotional literature containing the "Equal Housing Opportunity" slogan; (3) a conspicuous statement on all rental application forms and sales contracts that all dwellings are available irrespective of race and color; (4) the elimination from such application forms or contracts of an item requiring information as to the applicant's race; (5) written notification to military installations in Warwick's vicinity of a policy of nondiscrimination; and (6) information to each person inquiring as to purchase of a mobile home that lots will be made available at defendants' mobile home park.

Additionally, the government sought to require defendants to file with the court proposed written, objective, nonracial standards and criteria for the processing and approval of mobile homesite applications, and a report indicating steps taken toward implementing the provisions of the decree,

including copies of application forms and written notifications, and photographs of posted signs. The government requested also that the decree require defendants to retain and preserve records containing information wherein the race of applicants would have been determined visually and recorded without the applicant's knowledge, to file particularized reports as to whether applications were disapproved and why, and to permit representatives of the United States to inspect and copy all records of defendants relative to the rental of dwellings.

## II.

From my examination of the record of the prior appeal as well as the briefs filed therein, I cannot say that the exact form of decree requested by the government on remand was before the panel of the court which decided the prior appeal, although there was a footnote reference in the section of the government's brief arguing the need for affirmative relief to *United States v. West Peachtree Tenth Corp.*, 437 F.2d 221 (5 Cir. 1971), in which the decree approved by the Fifth Circuit was almost identical to that requested by the government in this case. Nonetheless, it seems clear that in the prior appeal we were of the view that affirmative relief should be granted. To my mind, the decree which the district court entered falls fatally short of that objective.

It is true that the decree actually entered does require the employer to give a course of instruction to its employees and to issue specific directions to cease discrimination. To that extent, it requires affirmative action. But the likelihood that such half-hearted measures will readily wipe out vestiges of past discrimination is slight. The vestiges are there because the word is abroad in the community as a whole that defendants practice discrimination. To eliminate these vestiges, more is required than simply telling a disadvantaged member of the community who has the temerity to test the present effect of defendants' past practices that he is now a welcome customer. The message to the community that past discrimination is no longer practiced and minority members are now welcome to do business with defendants should be carried to the community at large. Such steps as display of fair housing posters, use of the equal housing opportunity slogan on advertisements, statements on application forms and printed contracts that discrimination is not practiced, and written notification to military installations of a policy of nondiscrimination are essential to accomplish that purpose. Indeed, to my mind, they are the only reasonable means by which the community's misapprehensions about present practices can be corrected.

It should be stressed that the district court entered the decree on remand without a hearing and without taking additional evidence. Thus, there was no showing that vestiges of past discrimination have been dissipated. This appeal should therefore be decided on the likelihood of the effectiveness of the decree which was entered, not on circumstances which have changed since the prior appeal.

If the affirmative conditions sought by the government are required—and I think that they are—it is not unreasonable to me to say also that defendants should be put to the burden of assembling data and preparing reports for a reasonable period to show empirically that the corrective actions are effective. I do not disagree with the majority that with respect to record-keeping or any other provision, a decree should not be unduly burdensome to defendants in accomplishing the statutory and constitutional objectives of nondiscrimination. Where we differ is whether the burden of necessary steps should excuse imposing them. I think not when I give heed to the fact that the necessity for imposing them stems from defendants' failure to obey the statute and the Constitution. I would therefore direct that the government's request for the compilation of records, the filing of reports, and the preparation of written, objective, nonracial standards and criteria for employees to follow in the processing and approval of mobile homesite applications be granted.

Short of such steps, I think that the previous panel's direction for affirmative relief has been substantially diluted. Certainly, I have no doubt that based upon the uncontested fact of present effects of past discrimination and the likelihood of the effectivenesss of the district court's decree, it abused its discretion in entering it.