454 F.Supp. 1223 (1978)
The PARK VIEW HEIGHTS CORPORATION, the Inter-Religious Center for Urban Affairs, Inc., Barbara Bates, Nancy Billings, Robert Billings, Charlotte French, Jose French, Kermit Guy, Ella Mae Johnson and Raymond Johnson, Plaintiffs,
v.
The CITY OF BLACK JACK et al., Defendants.
No. 71-15 C (A).
United States District Court, E. D. Missouri, E. D.
July 10, 1978.
*1224 Lawrence G. Sager, New York Civil Liberties Union, New York City, for plaintiffs.
Roy W. Bergmann, Sheldon K. Stock, Clayton, Mo., for defendants.

MEMORANDUM OPINION
HARPER, District Judge.
This action is a continuation of Park View Heights Corp. v. Black Jack, 335 F.Supp. 899, reversed 467 F.2d 1208 (8th Cir. 1972). The sole issue before the Court is whether, given the established violation of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 et seq., the remedial injunctive relief requested by the plaintiff class is appropriate.
The jurisdiction of this Court exists pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 3610(d).
The original plaintiffs were two nonprofit corporations, the Inter-Religious Center for Urban Affairs, Inc., and Park View Heights Corporation, and eight individual plaintiffs suing as a class. The plaintiffs were determined to have standing to bring this action in Park View Heights Corp. v. Black Jack, 467 F.2d 1208 (8th Cir. 1972).
In the prayer of their complaint, plaintiffs requested the Court: To expedite the case; to declare Black Jack's Zoning Ordinance No. 12 unconstitutional and unlawful; to enjoin the defendants from enforcing Zoning Ordinance No. 12; to enjoin defendants from interfering with or obstructing in any way the construction of the Park View Heights Development; to enjoin defendants to affirmatively take whatever steps are necessary to allow construction of the Park View Heights project; to retain jurisdiction until the completion of the Park View Heights project; and to allow plaintiffs their costs herein.
After the filing of this action, the United States, on January 14, 1971, filed a complaint in this Court against the City of Black Jack, United States v. Black Jack, No. 71C 372. Therein, the United States alleged that the City of Black Jack had engaged in racially discriminatory housing practices in violation of the Fair Housing Act, 42 U.S.C. § 3601 et seq. by exercising its zoning powers to exclude the construction of a federally subsidized housing development for low and moderate income persons. The challenged conduct of the defendant, City of Black Jack, in United States v. Black Jack, supra, was precisely the same conduct challenged in the instant action. Both cases were based upon the same transactions and occurrences.
By the time the action herein was remanded by the Eighth Circuit Court of Appeals on September 25, 1972, the suit filed by the United States was well along in the discovery stage. To prepare the case at bar for trial at that time would have presented many problems, since the attorneys for the defendants in this action were also the attorneys for the defendant in the case filed by the United States. The attorneys for the parties were in agreement that the trial of this action should be delayed until United States v. Black Jack, supra, was tried and disposed of in the trial court. After the decision of Judge Meredith on March 20, 1974, in United States v. Black Jack, 372 F.Supp. 319 (E.D.Mo.1974), this case was set for trial on September 23, 1974.
*1225 On September 19, 1974, the attorneys for the parties in this action stipulated that the action be adjourned until the final disposition in United States v. City of Black Jack (71C 372[1]). They further stipulated that "should the United States in its capacity as plaintiff in United States v. City of Black Jack fail to establish that the challenged conduct of the City of Black Jack constitutes a violation or deprivation of rights secured by Title VIII of the Civil Rights Act of 1968 (42 U.S.C. § 3601 et seq.), the Thirteenth Amendment, or the Fourteenth Amendment, with the consent of the Court this action is to be dismissed;" and further, "should the United States in its capacity as plaintiff in United States v. City of Black Jack, establish that the challenged conduct of the City of Black Jack constitutes a violation or deprivation of rights secured by Title VIII of the Civil Rights Act of 1968 (42 U.S.C. 3601 et seq.), the Thirteenth Amendment, or the Fourteenth Amendment, nothing contained in this stipulation shall prejudice the parties plaintiff in proceeding with this action for the recovery of damages claimed to flow from the violation or deprivation so established." (Emphasis added.)
The decision of the district judge in the case of United States v. Black Jack was appealed to the Eighth Circuit Court of Appeals and an opinion was filed by that court on December 27, 1974, 508 F.2d 1179, cert. denied 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 694 (1975). After certiorari was denied by the Supreme Court in United States v. Black Jack, supra, the cause herein was set for trial on November 10, 1975, and because of discovery problems was reset for trial on January 12, 1976.
In United States v. Black Jack, the Eighth Circuit Court of Appeals determined that Zoning Ordinance No. 12 was shown to have a racially discriminatory effect and was not justified by any compelling governmental interest. It held at 508 F.2d 1188, "that Zoning Ordinance No. 12 of the City of Black Jack violates Title VIII, because it denies persons housing on the basis of race, in violation of [42 U.S.C.] 3604(a), and interferes with the exercise of the right to equal housing opportunity, in violation of [42 U.S.C.] 3617." The Court of Appeals did not, however, find any constitutional violations inasmuch as the action was not brought under the Constitution. United States v. Black Jack, supra, at 1184.
On December 12, 1975, the plaintiffs in this action filed an amended complaint. In the prayer of their amended complaint, plaintiffs requested the relief sought in their original complaint, plus, plaintiffs, Park View Heights Corporation and Inter-Religious Center for Urban Affairs, Inc., requested money damages in the amount $1,100,000.00 and such other actual monetary damages as may accrue before final disposition of the case.
On January 9, 1975, pursuant to the mandate of the Court of Appeals in United States v. Black Jack, supra, this Court, Judge Meredith presiding, entered an order declaring Zoning Ordinance No. 12 to be unlawful under the Fair Housing Act, and thus void. The Court also permanently enjoined the defendant, City of Black Jack, its officers and employees from enforcing Zoning Ordinance No. 12 or exercising any municipal authority for the purpose or with the effect of obstructing the construction of the Park View Heights development. All land zoned for multiple dwelling prior to the incorporation of Black Jack and the enactment of Zoning Ordinance No. 12 was ordered to revert to the zoning classification which existed prior to the city's incorporation. Finally, the Court ordered, "[T]he defendant City of Black Jack shall affirmatively take whatever steps are necessary to permit the construction and occupancy of the proposed Park View Heights Development."
On January 12, 1976 (the trial date in this case), the parties in this action entered into a consent judgment, whereby the defendant, City of Black Jack, would pay damages to the Park View Heights Corporation in the amount of $450,000.00. This consent judgment concluded the controversy between plaintiffs, Inter-Religious Center for Urban Affairs, Inc. and the Park View *1226 Heights Corporation, as against the defendants. The consent decree further concluded any claim for damages on behalf of the plaintiff class. The plaintiff class was not, however, precluded from seeking any further injunctive or declaratory relief  the issue presently before this Court. On January 12, 1972, the plaintiff class was certified by the Court. The class was identified as all individuals of low and moderate income housing who would have been eligible for the Park View Heights project.
The substance of plaintiffs' argument is that the delay involved in adjudicating the validity of Black Jack's Zoning Ordinance No. 12 has resulted in a considerable increase in construction costs to a point where it is not presently feasible to construct the proposed project. Plaintiffs assert that this increased cost could not be recovered without bankrupting the City of Black Jack. Therefore, the plaintiff class has requested some remedial injunctive relief against the defendants to redress its injuries. A trial was held on this matter on December 8, 1976. For the reasons stated below, plaintiffs' request for further injunctive relief will be denied.
Initially it should be noted that the decision contained herein in no way affects, limits or modifies the order of Judge Meredith made on January 9, 1975, in United States v. Black Jack. That order provides all of the equitable relief that was requested in plaintiffs' complaints. Zoning Ordinance No. 12 has been declared unlawful and void. The defendants are enjoined from enforcing Zoning Ordinance No. 12 or otherwise obstructing the construction of the Park View Heights Development. Judge Meredith's order further requires the defendants to take affirmative action to permit the construction of the project. No legal or governmental impediments by the City of Black Jack exist to prevent the construction of a low income housing development on the land in question. Only the economics of the situation bars construction. It is difficult for this Court to perceive plaintiffs' need for remedial injunctive relief where plaintiffs have never requested such relief in a complaint, and have already received by Judge Meredith's order the equitable relief they did request.
Plaintiffs seek to lay the blame upon the defendants for the adverse economic factors which assertedly bar construction. However, plaintiffs' proof points the other way. The testimony before the Court and the exhibits submitted indicate the cost of the project in November of 1970 to be between $1,381,000 and $1,696,000, exclusive of land costs. Costs of construction in February of 1976 were estimated at $3,085,000. However, other testimony indicated that compliance with new building regulations to meet the Minimum Property Standards of the Department of Housing and Urban Development represented approximately twenty percent of this increase in costs. Other changes in the applicable building codes and the National Electric Code also required additional money to construct. These increases in costs were due to factors which were totally unforeseeable and beyond the control of the City of Black Jack.
Yet, despite the increase in costs, the most significant factor barring construction was the inability to secure an increase in federal subsidies. In 1970, the Park View Heights project had tentatively obtained a mortgage subsidy through the Department of Housing and Urban Development under Section 236 of the National Housing Act. Section 236 of the National Housing Act was enacted by Congress in 1968. It provides for federal assistance in the form of monthly interest reduction payments calculated to reduce the mortgage obligations of the owner of an approved project to the amount that would have been required for principal and interest if the mortgage bore interests at one percent. By 1796 a moratorium was placed on new § 236 projects and no additional subsidy could be obtained beyond the original amount set aside by HUD. The discontinuance of § 236 programs by HUD was also unforeseeable and beyond the control of the defendants.
Injunctive relief will be refused until the Court is satisfied that the plaintiffs will suffer a substantial irreparable injury *1227 brought about by an illegal act by the defendants. Detroit News Publishing Ass'n v. Detroit Typographical Union No. 18, 471 F.2d 872, 876 (6th Cir.), cert. denied 411 U.S. 967, 93 S.Ct. 2149, 36 L.Ed.2d 687 (1973). Concededly the necessity of bringing litigation to invalidate the defendants' illegal Zoning Ordinance No. 12 provided an opportunity whereby HUD could add to the building codes and restrict the amount of mortgage subsidy available so as to effectively destroy the construction project. However, equity follows the law. Burchfield v. Evans, 242 F.2d 239 (10th Cir. 1957); Kenyon v. Automatic Instrument Co., 160 F.2d 878, 884 (6th Cir. 1947). The law does not hold an actor responsible for injuries resulting from an intervening and independent cause which so interrupts the chain of events as to become the responsible proximate cause, rendering the prior act too remote to operate as the proximate cause. Morrow v. Greyhound Lines, Inc., 541 F.2d 713, 719 (8th Cir. 1976); Johnson v. Serra, 521 F.2d 1289, 1292 (8th Cir. 1975). Plaintiffs have cited no cases to this Court wherein a party was held liable for intervening governmental acts which increased costs or reduced subsidies to the plaintiffs. This Court holds that the actions of HUD and some of the other economic factors which have destroyed the feasibility of this project constitute independent intervening causes of plaintiffs injury and are beyond the legal and equitable responsibility of the defendants.
With respect to the relief sought, plaintiffs have made several suggestions to this Court as to the various remedies available. Plaintiffs have proposed inter alia: That the defendant City be required to adopt an inclusionary zoning ordinance which would require a certain percentage of all housing development be low and moderate income units, to be built concurrently with other dwelling units; or that the defendant City be required to adopt a density bonus allowing developers to build more densely if low income units are included; or that the defendant City be required to create its own housing authority to develop a "section 8" housing program under 42 U.S.C. § 1437f. Plaintiffs have, however, submitted no evidence as to the feasibility or efficacy of any one of the suggested remedies. This Court has no way of determining whether any of the suggested remedies will achieve the goals desired by plaintiffs or result in an adverse impact on the surrounding community. A court will refrain from issuing an injunction, "unless the injunction `will be effective to prevent the damage which it seeks to prevent'." Humble Oil & Refining Co. v. Harang, 262 F.Supp. 39, 43-44 (E.D. La.1966); Great Northern Ry. Co. v. Lumber & Sawmill Workers, 140 F.Supp. 393, 396 (D.Mont.) aff'd 232 F.2d 628 (9th Cir.), cert. denied 352 U.S. 837, 77 S.Ct. 56, 1 L.Ed.2d 55 (1956). Injunctive relief may be denied where the order would work a hardship on third parties. Middletown Mfg. Co. v. Super Sagless Corp., 382 F.Supp. 979, 983 (N.D.Miss.), aff'd 515 F.2d 509 (5th Cir. 1975).
Plaintiffs also suggest that the Court defer to the expertise and discretion of local Black Jack officials in choosing and implementing the remedy desired. It is unclear to this Court how such a remedy will be enforceable once ordered. Difficulty of enforcement is, in itself, often a sufficient reason for denying injunctive relief. Refrigeration Engineering Corp. v. Frick Co., 370 F.Supp. 702, 715 (W.D.Tex.1974); Automatic Radio Mfg. Co. v. Ford Motor Co., 272 F.Supp. 744, 749 (D.Mass.), aff'd 390 F.2d 113 (1st Cir.), cert. denied 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653 (1968).
The power to grant injunctive relief should be exercised sparingly and with great caution, and only where the reason and necessity therefor are clearly established. Castro v. Beecher, 386 F.Supp. 1281, 1284 (D.Mass.1975); Coleman v. Aycock, 304 F.Supp. 132, 140 (N.D.Miss.1969). For an injunction to issue the right must be clear and the injury impending or threatened so as only to be averted by injunctive relief. An injunction will not be awarded in doubtful cases not coming within well established principles. Detroit News Publishing Ass'n v. Detroit Typographical Union No. 18, supra. Plaintiffs have not presented such a *1228 compelling case so as to clearly warrant the remedial relief requested. The need for further relief has not been clearly established. Further, this Court is reluctant to hold the defendants liable for the vagaries of federal housing codes and subsidies. It is not at all clear that any of the remedies suggested would eliminate the economic barriers which prevent construction. The project needs additional funding, yet all of the parties have settled their claims for damages by a consent decree.
Even if the above-noted defects in plaintiffs' request for additional relief did not exist, this Court would still be constrained by the fundamental limitations on the equity powers of the Federal courts. The power to grant remedial injunctive relief which interferes with the operation of a local governmental entity is not plenary. It "may be exercised `only on the basis of a constitutional violation'." Hills v. Gautreaux, 425 U.S. 284, 293, 96 S.Ct. 1538, 1544, 47 L.Ed.2d 792 (1976); Milliken v. Bradley, 418 U.S. 717, 738, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974); Swann v. Board of Education, 402 U.S. 1, 16, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). Such a doctrine is applicable to actions brought under Title VIII of the Civil Rights Act. Hills v. Gautreaux, supra; Garrett v. Hamtramck, 503 F.2d 1236, 1247 (6th Cir. 1974). Thus the power of this Court to issue remedial injunctive relief which interferes with local autonomy in decision-making exists only where a constitutional violation is present. However, no constitutional violation was found in United States v. Black Jack, supra, and the parties stipulated to be bound by the determination in that action as to whether the challenged conduct of the defendants violated plaintiffs' constitutional rights. In Garrett v. Hamtramck, supra, at 1247, the court relied upon the constitutional violations found therein, and distinguished the statutory violations, to justify the remedial provisions of the court's order. Statutory violations alone do not constitute a sufficient basis upon which remedial injunctive relief may be granted. Consequently, this Court is without the power to order the remedial injunctive relief requested by plaintiffs.
Accordingly, plaintiffs' request for further injunctive relief will be DENIED.
The Court adopts this memorandum opinion as its findings of fact and conclusions of law and the clerk of the Court is directed to prepare and enter the proper judgment as outlined above.