605 F.2d 1033
 CA 79-3232 The PARK VIEW HEIGHTS CORPORATION, the
Inter-Religious Center for Urban Affairs, Inc., Barbara
Bates, Nancy Billings, Robert Billings, Charlotte French,
Jose French, Kermit Guy, Ella Mae Johnson and Raymond
Johnson, on their own behalf and on behalf of all others
similarly situated, Appellants,
v.
The CITY OF BLACK JACK, Keith J. Barboro, Individually and
as Mayor of the City of Black Jack, Robert Schuchardt,
Individually and as Chairman of the Zoning Commission of the
City of Black Jack, Herbert Bangert, Mrs. Noah Epley, James
Connolley, Harold Evangelista, Joan Kessler, G. Joe Schulte,
Albert N. Schroeder and Alden Williams, the Black Jack City
Council, Gilbert Begeman, Donald Bressler, Judy Henke,
Robert Hoyt, William Hunder, Gerald Hutton, Karin
Schmiedler, Henry Sewing, George Urlich, Willard Volentine
and Clarence Thomas, The Zoning Commission of the City of
Black Jack, Appellees.
 No. 78-1660.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 10, 1979.
Decided Aug. 28, 1979.
Rehearing and Rehearing En Banc Denied Oct. 3, 1979.
 
 Lawrence G. Sager, New York Civil Liberties Union (argued), and Arthur Eisenberg, New York City, Martin E. Sloane and Bruce Gelber, National Committee Against Discrimination in Housing, Inc., Washington, D. C., and Samuel H. Liberman, II, Washington University School of Law, St. Louis, Mo., on brief, for appellants.
 Roy W. Bergmann, and Sheldon K. Stock, Clayton, Mo., for appellees.
 Frank E. Schwelb, Chief, Housing & Credit Section, Civil Rights Div., U. S. Dept. of Justice, and Drew S. Days, III, Asst. Atty. Gen., Washington, D. C., on brief, for amicus curiae, U. S.
 Before LAY, BRIGHT and STEPHENSON, Circuit Judges.
 LAY, Circuit Judge.
 
 
 1
 In 1969, the Inter-Religious Center for Urban Affairs (ICUA) began planning Park View Heights, a racially integrated town-house development under Section 236 of the National Housing Act, 12 U.S.C. § 1715z-1 (1968), which was to be located on an appropriately zoned tract of land in a then virtually all white unincorporated area of St. Louis County, Missouri. The development received preliminary approval from the United States Department of Housing and Urban Development (HUD); however, opposition arose among area citizens, who thereafter took the necessary steps to incorporate a new municipality, named Black Jack. That city became a legal entity in August 1970 and immediately created a planning and zoning commission. In October 1970, Black Jack enacted a zoning ordinance which barred all further apartment construction and made existing apartments non-conforming uses.
 
 
 2
 In a suit brought by the United States in 1974, this court held enactment of the zoning ordinance had a racially discriminatory effect and the City of Black Jack failed to prove enactment of the ordinance was necessary to promote a compelling governmental interest. United States v. City of Black Jack, 508 F.2d 1179 (8th Cir. 1974), Cert. denied, 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975).
 
 
 3
 The Park View Heights Corporation, ICUA, and eight prospective residents of Park View Heights suing as a class, had also brought suit against Black Jack and several of its officials, seeking to invalidate the zoning ordinance. After this court's decision in the suit brought by the United States, plaintiffs Park View Heights Corporation and ICUA amended their complaint to seek relief in damages as well as equitable relief.[1] Trial on the amended complaint was scheduled for January 1976. On the proposed trial date, however, a consent judgment was entered under which Black Jack agreed to pay $450,000 in damages to Park View Heights Corporation and ICUA to resolve the controversy. The consent decree precluded any claim for damages on behalf of the class of prospective residents of Park View Heights, but did not prohibit further declaratory or equitable relief on their behalf.
 
 
 4
 On October 29, 1976, the plaintiff class moved for permanent injunctive relief. It requested defendants be directed "to undertake measures whereby it can reasonably be expected that, within a reasonable time, in the City of Black Jack, there will be available for multi-racial, moderate-income occupancy, at least 108 dwelling units, roughly comparable in size, number of bedrooms, and quality to those which would have been constructed in Phase I of the Park View Heights Project."
 
 
 5
 On July 10, 1978, the district court denied the plaintiff class any form of relief. Park View Heights Corp. v. City of Black Jack, 454 F.Supp. 1223 (E.D.Mo.1978). This appeal followed; we reverse and remand for further proceedings.
 
 
 6
 Proper Standard For Awarding Equitable Relief.
 
 
 7
 The plaintiff class contends the appropriate standard to determine the scope of equitable relief for violation of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 et seq., was set forth by the Supreme Court in Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975):Where racial discrimination is concerned, "the (district) court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." Louisiana v. United States, 380 U.S. 145, 154, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965). And where a legal injury is of an economic character,
 
 
 8
 "(t)he general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." Wicker v. Hoppock, 6 Wall. 94, 99, 18 L.Ed. 752 (1867).
 
 
 9
 Id. at 418-19, 95 S.Ct. at 2372.
 
 
 10
 We agree with the plaintiff class that it is entitled to relief which "will so far as possible eliminate the discriminatory effects of the past." Id.; United States v. West Peachtree Tenth Corp., 437 F.2d 221, 228 (5th Cir. 1971); United States v. Warwick Mobile Homes Estates, 558 F.2d 194, 197 (4th Cir. 1977). In fashioning equitable relief to eliminate discriminatory effects, courts must be guided by the provisions and purposes of the Fair Housing Act. Cf. Teamsters v. United States, 431 U.S. 324, 364, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (Title VII); Albemarle Paper Co. v. Moody,422 U.S. at 417, 95 S.Ct. 2362 (Title VII). The primary objective of Title VIII is, as Vice-President Mondale said, when a Senator, to replace the ghettos "by truly integrated and balanced living patterns." 114 Cong.Rec. 3422 (1968). This objective is one " 'that Congress considered to be of the highest priority,' " Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 211, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972), and in order to achieve it, courts must construe the provisions of Title VIII broadly. Resident Advisory Bd. v. Rizzo, 564 F.2d 126, 147 (3d Cir. 1977), Cert. denied, 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978); Mayers v. Ridley, 465 F.2d 630, 635 (D.C.Cir. 1972) (en banc); See also Trafficante v. Metropolitan Life Ins. Co., 409 U.S. at 211, 93 S.Ct. 364.
 
 
 11
 Section 812 of the Fair Housing Act, 42 U.S.C. § 3612(c), provides in pertinent part:
 
 
 12
 The court may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual damages and not more than $1,000 punitive damages, together with court costs and reasonable attorney fees in the case of a prevailing plaintiff . . . .
 
 
 13
 Construed broadly, this section gives the district court the power it needs to fashion affirmative equitable relief calculated to eliminate as far as possible the discriminatory effects of violation of the Fair Housing Act.
 
 
 14
 In fashioning such affirmative equitable relief for civil rights violation, courts are governed by traditional principles of equity. Teamsters v. United States, 431 U.S. at 374-75, 97 S.Ct. 1843. In Lemon v. Kurtzman,411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973), Chief Justice Burger wrote:
 
 
 15
 (E)quitable remedies are a special blend of what is necessary, what is fair, and what is workable. "Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs." Brown v. Board of Education, 349 U.S. 294, 300, 75 S.Ct. 753, 99 L.Ed. 1083 (1955). Mr. Justice Douglas, speaking for the Court, has said,
 
 
 16
 "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims."
 
 
 17
 Hecht Co. v. Bowles, 321 U.S. 321, 329-330, 64 S.Ct. 587, 88 L.Ed. 754 (1944).See also Holmberg v. Armbrecht, 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946).
 
 
 18
 Id. at 200-01, 93 S.Ct. at 1469.
 
 
 19
 With these principles in mind, we now consider the district court's reasons for denying relief.
 
 
 20
 The District Court Opinion.
 
 
 21
 At trial, the plaintiff class sought equitable relief on the ground that the City of Black Jack was directly responsible for failure of the Park View Heights project because enactment of the zoning ordinance prevented the construction planned in 1971 and building costs markedly increased during the long litigation, ultimately making construction of the housing project impossible.[2] The district court rejected this contention, finding the City was not responsible for unforeseeable economic factors that came into existence subsequent to enactment of the zoning ordinance and contributed to the increase in construction costs. Chief among these were:
 
 
 22
 1. new building regulations enacted to meet the Minimum Property Standards of HUD;
 
 
 23
 2. other changes in applicable building codes and the National Electric Code; and
 
 
 24
 3. a moratoriam placed on additional mortgage subsidies from HUD under Section 236 of the National Housing Act.
 
 The court went on to hold that:
 
 25
 The law does not hold an actor responsible for injuries resulting from an intervening and independent cause which so interrupts the chain of events as to become the responsible proximate cause, rendering the prior act too remote to operate as the proximate cause. Morrow v. Greyhound Lines, Inc., 541 F.2d 713, 719 (8th Cir. 1976); Johnson v. Serra, 521 F.2d 1289, 1292 (8th Cir. 1975). Plaintiffs have cited no cases to this Court wherein a party was held liable for intervening governmental acts which increased costs or reduced subsidies to the plaintiffs. This Court holds that the actions of HUD and some of the other economic factors which have destroyed the feasibility of this project constitute independent intervening causes of plaintiffs injury and are beyond the legal and equitable responsibility of the defendants.
 
 454 F.Supp. at 1227.[3]
 
 26
 Although it is generally said that equity follows the law, we find it somewhat disturbing to believe in this day that equitable relief under the Fair Housing Act to correct racial discrimination is governed by rhetorical application of common law tort principles. Under our analysis of the scope of equitable relief under the Fair Housing Act, assuming the plaintiff class proved that the demise of the Park View Heights project was a discriminatory effect of defendants' violation, intervening economic factors should not be sufficient to relieve defendants of liability, but rather constitute factors affecting the breadth of equitable relief granted. In other words, they are possible factors to be reconciled with the plaintiff class' right to relief. Lemon v. Kurtzman, 411 U.S. at 200, 93 S.Ct. 1463.
 
 
 27
 The threshold question, then, is whether the plaintiff class established that the demise of the Park View Heights project was a discriminatory effect of enactment of the zoning ordinance. Defendants argue vigorously that the plaintiff class did not meet its burden. They argue that the class was made whole by the order entered by Judge Meredith on remand, after this court reversed the lower court ruling upholding the ordinance in United States v. City of Black Jack, 508 F.2d 1179 (8th Cir. 1974), Cert. denied, 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975). Judge Meredith's January 9, 1975 order reads:
 
 
 28
 IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:
 
 
 29
 1. So much of Zoning Ordinance No. 12 of the City of Black Jack, enacted on or about October 20, 1970, as purports to change the zoning classification of land previously zoned for multiple-family occupancy is hereby declared to be in violation of the Fair Housing Act of 1968, 42 U.S.C. 3601, et seq., and consequently to be void and unenforceable.
 
 
 30
 2. The defendant City of Black Jack, its officers, employees, agents, and successors, and all those in active concert or participation with any of them, are hereby permanently enjoined from
 
 
 31
 (a) enforcing, implementing, or giving any force or effect to Zoning Ordinance No. 12 of the City of Black Jack, insofar as it purports to affect the zoning classification of land previously zoned for multiple-family occupancy;
 
 
 32
 (b) exercising any municipal authority for the purpose or with the effect of preventing or impeding the construction or occupancy of the proposed Park View Heights development;
 
 
 33
 (c) otherwise making any dwelling unavailable to any person because of race, color, religion, sex, or national origin;
 
 
 34
 (d) otherwise interfering with the exercise or attempted exercise by any person of any right secured by the Fair Housing Act of 1968, 42 U.S.C. 3601, et seq.
 
 
 35
 3. The defendant City of Black Jack shall affirmatively take whatever steps are necessary to permit the construction and occupancy of the propose (sic), Park View Heights Development.
 
 
 36
 4. In view of the invalidation of the pertinent portions of Zoning Ordinance No. 12 by the decision of the United States Court of Appeals, the classification of all land zoned for multiple-family dwellings prior to the incorporation of Black Jack and the enactment of Zoning Ordinance No. 12 shall, until further order of this Court, revert to the zoning classification existing prior to said incorporation and enactment.
 
 
 37
 According to defendants, once the zoning ordinance was invalidated, the class was in the legal position it had been in prior to enactment of the ordinance, and was therefore made whole. We cannot agree. There can be no doubt that failure of the Park View Heights project was a direct result of defendants' violation of the Fair Housing Act. The record reflects that in 1970 an option on the land had been acquired and the necessary federal preliminary approval, which included a set-aside of government funds sufficient to finance the projected cost of the project, had been obtained. United States v. City of Black Jack, 508 F.2d 1182. At the trial, the general contractor for the project, Arthur Monsey, testified that by late 1970, he had arrived at a firm figure of $1,381,000 as the cost of the 108 unit project, was prepared to enter into a contract with the sponsor of the project at that price, and was ready to commence construction in late 1971. On the basis of this evidence, we think it clear that absent enactment of the discriminatory zoning ordinance, the project would have been constructed as planned.[4]
 
 
 38
 To ignore this very real effect of defendants' violation would be, as counsel for the United States argues, to leave the plaintiff class "with a 1971 key long after the lock has been changed." It is clear enactment of the zoning ordinance quite predictably delayed any possibility the project would be constructed; the rise in construction costs during the delay was both inevitable and foreseeable. Furthermore, it is obvious the plaintiff class still suffers a significant deprivation because of non-availability of 108 housing units in an integrated setting in St. Louis County.
 
 
 39
 Under these circumstances, we hold the demise of the Park View Heights project was a discriminatory effect within the provisions and purposes of the Fair Housing Act, and that the district court should not have relieved defendants of liability because of the existence of intervening economic factors.[5]
 
 
 40
 As an additional reason for denying relief, the district court held that:
 
 
 41
 Plaintiffs have not presented such a compelling case so as to clearly warrant the remedial relief requested. The need for further relief has not been clearly established. . . . It is not at all clear that any of the remedies suggested would eliminate the economic barriers which prevent construction. The project needs additional funding, yet all of the parties have settled their claims for damages by a consent decree.
 
 
 42
 454 F.Supp. at 1227-28.
 
 
 43
 We must again respectfully disagree. As we pointed out above, the class has shown it suffers a significant deprivation because of the absence of low cost housing in Black Jack, which is the effect of defendants' discriminatory conduct. Thus the need for further relief has been established.
 
 
 44
 Remedy.
 
 
 45
 We hold also that the district court abused its discretion in denying relief on the ground that it was not convinced of the merits of the suggested remedy. The class sought an injunction ordering Black Jack to undertake measures "whereby it can reasonably be expected that, within a reasonable time, in the City of Black Jack, there will be available for multi-radical, moderate-income occupancy, at least 108 dwelling units. . . ." The class intentionally made the wording of the proposed injunction vague, contending that the burden should be placed on the defendants to propose a plan for making 108 units available within a reasonable time. The class did, however, suggest several methods by which Black Jack might accomplish this without expenditure of its own funds. These included: the adoption of an "inclusionary zoning ordinance," which would require future land developers to provide a specified percentage of low and moderate income housing units in their developments;[6] adoption of "density bonuses," which induce developers to provide low and moderate income dwelling units by permitting more dense development of land if such units are included; establishment of "set-aside" or "override" procedures which waive some building or zoning requirements for developers of low and moderate income housing; and development of a low rent public housing program pursuant to 42 U.S.C. § 1437 et seq., or a Section 8 housing program pursuant to 42 U.S.C. § 1437f.
 
 
 46
 The court rejected the contention that the burden should be placed on the defendants to propose a suitable remedy. Under the circumstances of this case, we agree that responsibility should be placed on the plaintiff class to come forward with a proposed plan for the construction of housing. Black Jack has already paid $450,000 in damages to Park View Heights Corporation and ICUA. It has no liability in damages to the plaintiff class. It does not have the means to build the low and moderate income housing entirely on its own. However, the district court's rejection of the broad remedy proposed by the plaintiff class should not relieve it of the responsibility of considering other forms of relief requested by the class, or some other equitable alternative.
 
 
 47
 We remand this case for the district court to further consider the award of equitable relief. It is not the function of this court to determine the equitable relief; under the provisions of 42 U.S.C. § 3612(c) that discretion is vested in the district court. However, for the guidance of the district court and the parties, we set forth the following comments:
 
 
 48
 1. In exercising its discretion to fashion an equitable remedy, the district court must be ever mindful of the important national goals at stake, and must exercise its discretion in light of the purposes of the Fair Housing Act. Albemarle Paper Co. v. Moody, 422 U.S. at 416-17, 95 S.Ct. 2362. The City of Black Jack has violated the Fair Housing Act and has been instrumental in the failure of the Park View Heights project. We can think of no reason why, in order to remedy its violation, the City should not be required to take affirmative steps along with the plaintiff class in its efforts to bring low cost housing to Black Jack.
 
 
 49
 2. At the same time, however, the district court should not order relief that is more intrusive on governmental functions than is necessary to achieve the goals of the Fair Housing Act. Resident Advisory Bd. v. Rizzo, 564 F.2d at 149; United States v. West Peachtree Tenth Corp., 437 F.2d at 228-29; United States v. Warwick Mobile Homes Estates, 558 F.2d at 197.
 
 
 50
 3. In order to devise a remedy for violation of the Fair Housing Act which will not be too intrusive on Black Jack's governmental functions, we suggest the district court meet with both parties and propose joint conferences over a period of time sufficient to allow the parties to reach a definite plan to cooperatively obtain the goal sought. Twice the United States has appeared as amicus curiae; representatives of the United States and HUD should be requested to participate in such conferences. Only upon failure of these conferences should the court undertake to formulate a decree itself.
 
 
 51
 4. Before any development can take place, there must be land available upon which to build the housing. The court should consider the City's duty to seek out and make land sites available for purchase by the plaintiff class that are properly zoned and so located with reference to public facilities and services as to meet established criteria for low and moderate income family housing.
 
 
 52
 5. During oral argument before this court, the attorney for the plaintiff class indicated that under appropriate circumstances, the plaintiff class would be willing to undertake the responsibility to find a developer and present a plan to the City of Black Jack for construction of moderate and low income housing. The class has been unwilling to assume this responsibility in part because, as the attorney for the class stated:
 
 
 53
 No developer in his or her right mind at this point in time would go into the City of Black Jack and attempt to build low and moderate income housing, . . . because the City of Black Jack has indicated its powerful and abiding hostility to such projects.
 
 
 54
 Judge Meredith made it clear in his 1975 opinion that Black Jack has the duty to cooperate with the plaintiff class in its efforts to construct low and moderate income housing within the boundaries of Black Jack. This court now seeks on remand of this case to give teeth to that decree. Therefore, no developer should be reluctant to consider a project within the boundaries of the City of Black Jack because of possible local governmental opposition.
 
 
 55
 We are hopeful that, upon remand of this case, the parties will finally reach a meeting of the minds and put an end to this long and bitterly fought conflict. As costs of construction continue to spiral upward, it becomes more and more difficult to remedy the wrong done to the plaintiff class.
 
 
 56
 Reversed and remanded.
 
 
 
 [1]
 This court had earlier reversed a district court ruling that the individual plaintiffs and ICUA lacked standing to challenge the ordinance. Park View Heights Corp. v. City of Black Jack, 467 F.2d 1208 (8th Cir. 1972). On remand the parties stipulated they would be bound by final disposition of the Government's suit, in which the ordinance was found to be illegal
 
 
 [2]
 According to evidence presented by the plaintiff class, the projected contract price in 1970 for construction of the 108 units was $1,381,000. By February 1976, the projected price had risen to $3,085,274
 
 
 [3]
 The plaintiffs and the United States, appearing as amicus curiae, counter with the Restatement of Torts which reads:
 Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.
 Restatement (Second) of Torts § 442B (1965).
 
 
 [4]
 This conclusion is further corroborated by this court's previous observation in United States v. City of Black Jack :
 Opposition to Park View Heights was repeatedly expressed in racial terms by persons whom the District Court found to be the leaders of the incorporation movement, by individuals circulating petitions, and by zoning commissioners themselves. Racial criticism of Park View Heights was made and cheered at public meetings. The uncontradicted evidence indicates that, at all levels of opposition, race played a significant role, both in the drive to incorporate and the decision to rezone.
 508 F.2d at 1185, n. 3.
 
 
 [5]
 The district court also denied relief because, "(s)tatutory violations alone do not constitute a sufficient basis upon which remedial injunctive relief may be granted." Park View Heights Corp. v. City of Black Jack, 454 F.Supp. at 1228. We hold this reasoning to be erroneous. The district court has the power to order remedial injunctive relief to redress violations of the Fair Housing Act so long as the relief granted is not more extensive than is necessary to cure the violation. 42 U.S.C. § 3612(c); Resident Advisory Bd. v. Rizzo, 564 F.2d 126, 149 (3d Cir. 1977), Cert. denied, 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978)
 
 
 [6]
 This alternative appears more desirable than the density bonuses or "override" procedures, which often tend to become self-defeating. The greater the density, the more difficulty there is in maintaining the project