563 F.2d 159
 Janice Winkley GORE, Plaintiff-Appellant Cross-Appellee,
v.
Hozie TURNER, owner, d/b/a Madrid Apartments,
Defendant-Appellee Cross- Appellant.
Kathy HOBBS, Plaintiff-Appellant Cross-Appellee,
v.
Hozie TURNER, owner, d/b/a Madrid Apartments,
Defendant-Appellee Cross- Appellant.
 No. 75-3640.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 17, 1977.
Rehearing Denied Feb. 10, 1978.
 
 Fred L. Banks, Jr., Jackson, Miss., Melvyn R. Leventhal, Jack Greenberg, Charles Stephen Ralston, Bill Lann Lee, New York City, for plaintiff-appellant cross-appellee.
 Pat H. Scanlon, Jackson, Miss., for defendant-appellee cross-appellant.
 Appeals from the United States District Court for the Southern District of Mississippi.
 Before GEWIN, RONEY and HILL, Circuit Judges.
 JAMES C. HILL, Circuit Judge:
 
 
 1
 Janice Gore and Kathy Hobbs, the plaintiffs in the case on appeal, brought class actions against defendant Hozie Turner, alleging that he engaged in racial discrimination in the operation of his apartment complexes. The Gore class action and the Hobbs class action were tried separately to the district court without a jury. The district court held that defendant Turner racially discriminated against the class represented by Gore in violation of 42 U.S.C. § 1981 and § 1982 and that the class was entitled to injunctive relief. Although the district court awarded Gore damages for her out-of-pocket costs, it refused to award her a reasonable attorney's fee, damages for emotional distress, or punitive damages. In the Hobbs suit, the district court held that defendant Turner had not violated 42 U.S.C. §§ 1981, 1982, or 3612. We affirm the district court's holdings concerning liability in both cases, but we reverse and remand on the issue of damages in the Gore case.
 
 
 2
 I. The Gore Suit.
 
 
 3
 Defendant Turner owns and manages three apartment complexes, Madrid Apartments, Monterey Apartments, and Fairmont Towne Houses, in Jackson, Mississippi. Plaintiff Gore, a black woman, was transferred to Jackson in November 1971 to fill a position with a salary exceeding $10,000 per year. In response to a sign posted at Madrid Apartments announcing vacancies, Gore went to the resident manager's office on November 9, 1971, and was shown two apartments. Gore filled out an application form and left a deposit check for $50.00. The resident manager told Gore that it would take 24 hours to check her credit standing and that she should come back the next afternoon. Gore returned the next afternoon and saw defendant Turner. Turner told Gore that he could not rent her an apartment until a credit investigation was completed and that he did not know how long the investigation would take. Turner then told Gore that she would be contacted when the credit investigation was completed and when an apartment was available.
 
 
 4
 Gore called Turner several times during the next few days, and each time he told her that the credit investigation had not been completed. On November 19, Gore withdrew her deposit check and told Turner that she would resubmit it when the credit check was completed. Turner never contacted Gore, and she finally moved into a house in December 1972, though the house had been vacant for some time and had been vandalized. Gore testified that, until that time, she would have moved into the Madrid Apartments if an apartment had been made available to her.
 
 
 5
 The testimony of Lee B. King, a black, demonstrated that Turner had racially discriminated against other prospective black tenants. When King telephoned the resident manager of Madrid Apartments on September 15, 1971, he was told that apartments were available. The day after he saw the resident manager and paid a deposit fee, however, the resident manager returned his deposit fee and told him that he would have to go on a waiting list. Without identifying himself, King called the next day and was told that an apartment was available if he came by to apply. When he replied that he had, there was a long silence and the resident manager said that she would call him. She never did.
 
 
 6
 The plaintiff also introduced testimony demonstrating that the defendant engaged in racial steering during the pendency of the case on appeal. On November 14, 1973, Louisa Floyd, a white, requested a one bedroom apartment at Madrid Apartments. The resident manager told her that none were available. On November 16, 1973, Floyd requested a two bedroom apartment at Madrid Apartments. The resident manager told her that a two bedroom apartment was available but that it was at Monterey Apartments. When Floyd and Ruth Weining, a white, went to the resident manager's office that day, he told them that only 50 percent of the residents at Madrid Apartments were white, whereas all the residents at Monterey Apartments were white. Floyd testified that the resident manager said he showed "people like you two" the apartments at Monterey. Weining's testimony corroborated Floyd's testimony; Weining clearly recalled the resident manager's statement concerning the racial compositions of Madrid and Monterey and the steering of prospective tenants based on race.
 
 
 7
 Mildred Davis, a black, requested a one bedroom apartment at Madrid Apartments the same day as Floyd. The resident manager told Davis that the only available apartment was a two bedroom unit at Madrid; he did not volunteer this information to Floyd. Davis' observation of the tenants at Madrid was that they were predominantly black, though no blacks had resided there when plaintiff Gore applied. Davis telephoned the resident manager again on November 19, 1973, and the two bedroom apartment at Madrid Apartments was still available.
 
 
 8
 The district court held that defendant Turner racially discriminated against Gore in violation of 42 U.S.C. § 1981 and § 1982 by denying her the same right to lease rental property as is enjoyed by white citizens. The court found that, for purposes of injunctive relief only, Gore established her class as all other blacks who had been denied equal access to housing under the defendant's control on the basis of race. The court granted an injunction permanently enjoining Turner, his agents, employees, and attorneys from failing or refusing to rent apartment space in the Madrid Apartments, Monterey Apartments, or Fairmont Towne Houses on the basis of race; from discriminating against any person in the terms, conditions, or privileges of rentals or in the provision of services or facilities in connection therewith on the basis of race; from making, printing, or publishing or causing to be made, printed, or published any notice or advertisement with respect to the rental of apartment space that indicates any preference, restriction, or discrimination on the basis of race; and from representing to any person on the basis of race that any apartment space is not available for inspection or rental when such space is in fact available.
 
 
 9
 Because Gore qualified her class pursuant to Rule 23(b)(2), the trial court held that only Gore was entitled to damages. The court awarded her damages only in the amount she paid to make her purchased home habitable and to store her furniture while she sought living accommodations. The district court did not award Gore her attorney's fee because no evidence was offered at trial "or subsequent thereto" concerning a reasonable fee and because no evidence was offered that Gore was financially unable to pay her attorney's fee. Applying the clearly erroneous standard, this Court affirms the district court's holding that defendant Turner violated 42 U.S.C. § 1981 and § 1982. This Court, however, reverses and remands the issue of damages to the district court.
 
 
 10
 When the district court rendered its decision in the case on appeal, Congress had not specifically authorized fee awards in § 1982 cases. After the decision in this case, however, Congress amended 42 U.S.C. § 1988 to provide in pertinent part:
 
 
 11
 . . . In any action or proceeding to enforce a provision of sections 1981 (and) 1982 . . . of (title 42) . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.
 
 
 12
 This statutory amendment is retroactively applicable to any case pending on the date of its enactment. Hodge v. Seiler, No. 75-3439, 558 F.2d 284 (5th Cir. 1977); Rainey v. Jackson State College, 551 F.2d 672 (5th Cir. 1977). Under the standard announced in Bradley v. School Board of City of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1973), the case on appeal was pending on the date of enactment. Therefore, it is necessary to remand the attorney's fee issue to allow the district court to reconsider it in light of § 1988. In making that determination, the district court should consider the factors stated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), and the services expended on the plaintiff's behalf during this appeal. Hodge v. Seiler, No. 75-3439, 558 F.2d 284 (5th Cir. 1977).
 
 
 13
 On reconsideration of the attorney's fee issue, the district court should note that Gore is not precluded from an award pursuant to § 1988 merely because she did not offer proof of the amount of her attorney's fee at trial. The United States Supreme Court has expressed a policy of granting attorneys' fees to successful plaintiffs in civil rights suits except in exceptional circumstances. Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). Additionally, the generally accepted practice is that, in the absence of a local rule requiring proof of attorneys' fees during trial, the successful party need not prove them until after trial. Wright & Miller, Federal Practice and Procedure § 2679 (1972). Finally, § 1988 provides that "the prevailing party" may recover a reasonable attorney's fee "as part of the costs." Both phrases indicate that the amount to be awarded for the attorney's fee will be determined after a decision on the merits.
 
 
 14
 The district court also may not refuse to award Gore a reasonable attorney's fee merely because she did not prove that she was unable to pay it. Thompson v. Madison County Board of Education, 496 F.2d 682 (5th Cir. 1974); Miller v. Amusement Enterprises, Inc., 426 F.2d 534 (5th Cir. 1970). The existence of an attorney-client relationship, a status that exists wholly independently of compensation, is all that is required. Congress did not intend that vindication of statutorily guaranteed rights would depend on the private party's economic resources or on the availability of free legal assistance.
 
 
 15
 The trial court awarded Mrs. Gore, as general damages, only her out-of-pocket expenses proven at trial. On remand, the district court also should award damages for the emotional distress, if any, that Gore suffered. These damages may be inferred from the circumstances as well as proved by the testimony. See Bryan v. Jones, 519 F.2d 44, 46 (5th Cir. 1975); Seaton v. Sky Realty Co., Inc., 491 F.2d 634, 636 (7th Cir. 1974). The district court should consider in particular any emotional distress that may have been caused by the plaintiff's inability to enroll her older child in school until she moved into the house[1] and by the plaintiff and her children moving into a home that had been vandalized.[2] Of course, an award for emotional distress must be preceded by a finding of a sufficient causal connection between the defendant's illegal actions and the plaintiff's injury.
 
 
 16
 After reviewing all the evidence on these general damages, an award should be made which fairly compensates the plaintiff if the evidence discloses her loss with reasonable certainty. Of course, the trial court should bear in mind that, even in the absence of proof of the extent of such damages, Mrs. Gore would be entitled to nominal general damages. In a case factually similar to that on appeal, but in which proof of damage was slight, this Court stated:
 
 
 17
 It was recognized as long ago as 1919 that damage could be presumed from the denial of a constitutional right. . . .
 
 
 18
 Having demonstrated that she was the victim of discrimination which has been described as among the "badges and incidents of slavery," Jones v. Alfred H. Mayer Co., 392 U.S. 409, 441, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), it was error for the district court to decline to award Mrs. Hodge at least nominal damages.
 
 
 19
 Hodge v. Seiler, No. 75-3439, 558 F.2d 284, 287 (5th Cir., 1977).
 
 
 20
 See also, Sexton v. Gibbs, 327 F.Supp. 134, 142 (N.D.Tex.1970), aff'd, 446 F.2d 904 (5th Cir. 1971).
 
 
 21
 Gore also should have been awarded punitive damages. The general rule is that punitive damages may be imposed only if the defendant has acted willfully and with gross disregard for the plaintiff's rights. The award of punitive damages "involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent" to future illegal conduct. Lee v. Southern Home Sites Corp.,429 F.2d 290, 294 (5th Cir. 1970).
 
 
 22
 In Lee v. Southern Home Sites Corp., supra, this Court held that an award of punitive damages was inappropriate though the defendant had refused to sell land to a black person for racial reasons. The Court stated that the defendant was not punitively guilty for its conduct because it had engaged in this conduct before the decision in Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), in which the Supreme Court held for the first time that § 1982 does not require any state action. In the case on appeal, however, the defendant racially discriminated against Gore three years after the decision in Jones and engaged in racial steering five years after that decision.
 
 
 23
 Because of the seriousness of the defendant's conduct, this Court directs the district court to award punitive damages to deter the defendant from such conduct in the future. In determining the amount of punitive damages, the district court may consider that the defendant allegedly consulted with the local office of Housing and Urban Development concerning the action he should take on Gore's application. The district court, however, also should consider that to obtain government loans, the defendant signed an agreement stating that he would not discriminate on the basis of race.
 
 
 24
 Both the plaintiff and the defendant object to the injunction entered by the district court. The plaintiff argues that the injunction is inadequate to prevent future discriminatory actions by the defendant. The plaintiff requests that the injunction entered in United States v. West Peachtree Tenth Corp., 437 F.2d 221 (5th Cir. 1971), be entered in the case on appeal supplemented by certain other provisions. Although the injunction entered in West Peachtree has been used as a model decree in several cases, "it does not establish a floor beneath which relief in such cases may not go. Appropriate relief... is to be determined on a case-by-case basis... with relief tailored in each instance to the needs of the particular situation." United States v. Jamestown Center-in-the-Grove Apartments, 557 F.2d 1079, 1080 (5th Cir. 1977). Furthermore, framing an injunction appropriate to the facts of a particular case is a matter peculiarly within the discretion of the district judge. J. M. Fields of Anderson, Inc. v. Kroger Co., 330 F.2d 686, 687 (5th Cir. 1964). We cannot hold that the district judge abused his discretion in the case on appeal.
 
 
 25
 The defendant objects that the district court should not have included Monterey Apartments within the terms of the injunction and should not have admitted any evidence relating to Monterey because neither plaintiff Gore nor plaintiff Hobbs had any connection with that complex. The United States Supreme Court and this Court have recognized that a trial court must be permitted sufficient flexibility to fashion effective and equitable remedies in civil rights cases. The twin goals in housing discrimination cases are to insure that no future violations occur and to remove any lingering effects of past discrimination. Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 238, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969); Jones v. Alfred H. Mayer Co., 392 U.S. 409, 414, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968); United States v. Jamestown Center-in the-Grove Apartments, 557 F.2d 1079, 1080 (5th Cir. 1977). We hold that the district court did not abuse its discretion by including within the terms of the injunction all three complexes owned and managed by the defendant. The defendant establishes uniform policies, practices, and procedures for all three complexes, and he requires his resident managers to refer prospective tenants to the other complexes. The plaintiff's testing reveals that the defendant's racially discriminatory practices weave Madrid and Monterey into one fabric and that relief against only one complex will not correct a demonstrated wrong.
 
 
 26
 The defendant raises two objections to the district court's certification of Gore's suit as a class action. First, the defendant objects that Gore did not comply with Rule 23(c)(1) of the Federal Rules of Civil Procedure, which provides that "(a)s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Specifically, the defendant objects that Gore failed to seek a determination by the district court that a class action was maintainable.
 
 
 27
 Either the plaintiff or the defendant may move for a determination pursuant to Rule 23(c)(1). See United States v. United States Steel Corp., 520 F.2d 1043, 1052 (5th Cir. 1975); Wright & Miller, Federal Practice and Procedure § 1785 (1972). Additionally, this Court has held that the trial court has an independent obligation to decide whether an action was properly brought as a class action even if neither party moves for a ruling. Rodriguez v. East Texas Motor Freight, 505 F.2d 40, 50 (5th Cir. 1974), rev'd on other grounds, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); Wright & Miller, supra. This Court has even held that maintenance of a suit as a class action may be proper even if the trial court never made a formal, explicit determination pursuant to Rule 23(c)(1). Bing v. Roadway Express, Inc., 485 F.2d 441 (5th Cir. 1973).
 
 
 28
 Rule 23(c)(1) requires only that the determination be made as soon as "practicable." In the case on appeal, the defendant made a pretrial motion to obtain an order denying class action certification. The district court disposed of this motion in an opinion stating that the court declined to issue an order denying the propriety of the class action until more evidence was before it concerning the class' identity. The plaintiff brought her action as a class action, see Bing v. Roadway Express, Inc., supra ; Danner v. Phillips Petroleum Co., 447 F.2d 159 (5th Cir. 1971), and she introduced evidence during trial that Turner consistently discriminated against prospective tenants on the basis of race. After hearing this testimony, the district court was able to determine that Gore's action should be certified as a class action. Therefore, on the facts of this case, the plaintiff's failure to request a determination pursuant to Rule 23(c)(1) was not fatal to maintenance of her suit as a class action.[3]
 
 
 29
 The defendant's second objection to the district court's certification of Gore's suit as a class action is that Gore's class does not meet the requirements of Rule 23(a)[4]. This Court has held that the requirements of Rule 23(a) must be read liberally in the context of suits brought pursuant to § 1981. Section 1981 suits are inherently class suits because, by definition, discrimination on the basis of race is a class wrong. Rodriguez v. East Texas Motor Freight, 505 F.2d 40, 50 (5th Cir. 1974), rev'd on other grounds, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); Sumlin v. Brown, 420 F.Supp. 78, 80 (N.D.Fla.1976). Gore defined her class as all other blacks who have been denied equal access to housing under the defendant's control. Because this class was certified only for injunctive relief, this Court finds that the class is more appropriately defined as all blacks who, in the future, may be denied equal access to housing under the defendant's control. Sumlin v. Brown, supra. As so defined, Gore's class meets the requirements of Rule 23(a).
 
 
 30
 II. The Hobbs Suit.
 
 
 31
 Plaintiff Hobbs, a white woman, lived at the Fairmont Towne Houses from May 1971 to July 1972. Hobbs employed a black baby-sitter, Yvonne Roots. On June 5, 1972, Roots and Hobbs' two children, who were 8 years and 2 1/2 years old, were in the pool. The resident manager told Roots to leave the pool because the apartment pool rules required that guests using the pool be accompanied by an apartment resident. Hobbs then went to the pool and explained to the resident manager that Roots was her baby-sitter and that her duties included swimming with the children. The resident manager replied that Roots could not go back into the pool until Hobbs talked to Turner. Within an hour of the incident, Turner gave Hobbs an eviction notice that stated: "Your lease at Fairmont Towne Houses expired on April 30, 1972. You are being asked to vacate the premises as of June 30, 1972, according to article 7.-c. of the lease agreement, which states 'Conduct which is, in the opinion of the Management, not in keeping with the wishes of the neighboring community.' "
 
 
 32
 Turner testified that he evicted Hobbs because she had a history of misbehavior. The district court listed fourteen examples in its opinion, such as:
 
 
 33
 . . . Mrs. Hobbs' plumbing fixtures were in continuous need of repair, due to her making wax candles in the apartment and her children throwing things down the drain.
 
 
 34
 Mrs. Hobbs would leave her children alone, unattended, and neighboring ladies would have to look out for the children and feed them.
 
 
 35
 Mrs. Hobbs and her boyfriend Thomas made furniture in the apartment, using electrical saws, and placed all of Defendant Turner's furniture outside.
 
 
 36
 On March 19, 1972, Mrs. Hobbs and her boyfriend, Rodney Thomas, engaged in a physical fight which started in her apartment and continued outside around the swimming pool, with Mrs. Hobbs screaming and Thomas dragging her by her hair. Four policemen were called to the scene, and they arrested Thomas after a fight with him. Thomas was convicted and paid a fine for disturbing the peace.
 
 
 37
 On cross-examination, Hobbs admitted that many of these incidents had occurred.
 
 
 38
 Turner testified that he had intended to evict Hobbs on April 30, 1972, the date her original one year lease expired, but that the expiration date had "slipped his mind." After the June 5 dispute between Hobbs and the resident manager concerning Roots' use of the pool, Turner checked the expiration date of Hobbs' lease. When he found that the lease already had expired, he gave Hobbs the eviction notice.
 
 
 39
 Hobbs filed this class action against Turner pursuant to 42 U.S.C. §§ 1981, 1982, and 3612(a), (c), alleging that she was evicted because her black baby-sitter used the swimming pool. Hobbs' alleged class is " all tenants of apartments under the control of (Turner) who have been denied or evicted from apartments or otherwise punished by (Turner) because of their association with blacks." The district court held that Hobbs could not maintain her action as a class action because she did not show that any other person qualified as a class member. We affirm this holding because the district court did not abuse its discretion. Boggs v. Alto Trailer Sales, Inc., 511 F.2d 114, 117 (5th Cir. 1975). The district court further held that Turner is not liable to Hobbs individually because she did not carry her burden of proof. Applying the clearly erroneous standard, we affirm the district court's holding.[5]
 
 
 40
 Although Hobbs and Gore filed a consolidated action, the district court severed their claims for trial because the court found that the actions did not involve a common question of law or fact. Hobbs argues that the district court erred in refusing to consider the proof advanced in the Gore case when determining the existence of liability in the Hobbs case. We find it unnecessary to decide whether it was error for the district court to sever these actions; even if the district court had considered the evidence advanced in the Gore case, as well as that advanced in the Hobbs case, Hobbs still would not have carried her burden under 42 U.S.C. §§ 1981, 1982 or 3612(a), (c).
 
 
 41
 Finally, the defendant argues that he is entitled to an award of a reasonable attorney's fee because 42 U.S.C. § 1988 provides that the " prevailing party" may be granted such an award. The defendant raised this argument for the first time during his oral argument. Therefore, in accordance with F.R.A.P. Rule 28, 28 U.S.C., we need not consider this argument.
 
 
 42
 AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 Record at 502
 
 
 [2]
 Record at 507
 
 
 [3]
 The Supreme Court's decision in East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), does not require a different result. In Rodriguez, the Supreme Court held that the named plaintiffs were not proper class representatives because they were not members of the class they purported to represent. The Court stated that the record disclosed two other "strong indications" that the named plaintiffs would not adequately protect the interests of the class. One indication was the named plaintiffs' failure to move for class certification prior to trial "(e)ven assuming . . . that a district judge has an obligation on his own motion to determine whether an action shall proceed as a class action." 97 S.Ct. at 1897. Gore's failure to request certification does not carry an implication of her inadequacy as class representative. She was entitled to rely on the district court's indication that it would determine the maintainability of the class action after receipt of more evidence. She adequately protected the interests of the class by bringing her suit as a class action and by introducing evidence that demonstrated the existence of a class injury rather than of a mere individual injury
 
 
 [4]
 Rule 23(a) provides:
 One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 
 
 [5]
 Hobbs alleges that the district court found that the resident manager's request for Roots to leave the pool was racially motivated and was a cause for Hobbs' eviction. We agree that Hobbs would have stated a cause of action if even one reason for her eviction was racially motivated. Burris v. Wilkins, 544 F.2d 891, 891 (5th Cir. 1977); Riley v. Adirondack Southern School for Girls, 541 F.2d 1124, 1125 (5th Cir. 1976). The plaintiff, however, misstated the district court's holding. The district court first found that Hobbs was not the victim of discrimination and held that she had not stated a cause of action. The district court's alternative holding that Hobbs had not proved her cause of action even assuming discrimination, may be disregarded. This was an alternative holding of the district court that must be examined only if the initial holding was erroneous. Because we hold that Hobbs' eviction was not racially motivated, we need not reverse on the basis of the district court's alternative holding