Bertha M. ROGERS, Plaintiff,

v.

**66–36 YELLOWSTONE BLVD.
COOPERATIVE OWNERS,
INC., Defendant.**

No. 82 CV 1341 (ERN).

United States District Court,
E.D. New York.

Oct. 9, 1984.

Jose A. Rivera, Brooklyn, N.Y., for plaintiff.

Deegan, Scibilia & Reardon by Joseph C. Scibilia, Alan J. Reardon, Hempstead, for defendant.

## MEMORANDUM ORDER

NEAHER, District Judge.

Plaintiff Bertha Rogers, a black teacher, sued defendant 66–36 Yellowstone Blvd. Cooperative Owners, Inc. ("Yellowstone"), an apartment cooperative, under the Civil Rights Act of 1866, 42 U.S.C. §§ 1981–82 (one claim), and the Fair Housing Act of 1968, 42 U.S.C. § 3612. Specifically, Mrs. Rogers charged Yellowstone with racial discrimination in disapproving her attempted apartment purchase.[1] On January 26, 1984, a jury returned a verdict for Mrs. Rogers on both statutory claims, awarding $25,000 in compensatory damages and $1,000 in punitive damages.[2]

That verdict had solid record support. Though circumstantial, the evidence of discrimination was compelling. While having greater than a $500,000 net worth, Mrs. Rogers' proposed purchase of a $49,-250 apartment was rejected purportedly because she did not meet Yellowstone's financial criteria. Defendant, in particular, was allegedly concerned with the "source" of plaintiff's wealth, i.e., how could she—on a teacher's pay—accumulate such assets.

Although Yellowstone's supposed skepticism was unallayed by Mrs. Rogers' explanations (e.g., she bought real estate when prices and interest rates were low), the jury was satisfied as demonstrated by its answers to the Special Verdict Form. In

1. In her complaint, plaintiff also alleged sex discrimination but dropped that contention at trial.

2. In addition to the federal statutes, Mrs. Rogers sued under New York State's Human Rights Law, Executive Law § 296. Without objection, however, the Court in its Jury Instructions and

the same way, the jury manifested its disbelief in Yellowstone's account. For instance, despite Yellowstone's given reason for disapproving the application and concomitant assertion that Mrs. Rogers' race played no part in that decision, the jury determined that "a motivating reason for defendant's refusal was the race of plaintiff." Special Verdict Form, §§ 1981–82, Interrogatory # 3.

Having itself heard the witnesses' testimony and assessed their credibility, the Court views that finding along with the verdict as a whole to be consistent with the evidence. From those prefatory remarks, the Court turns to the remaining issues.

### Attorney's Fees

While not having yet moved, plaintiff's counsel stated at the trial's close and in a later conference that he would request attorney's fees. Given the absence of a formal motion, the Court will not now rule on that matter. However, having surveyed the law, the Court has discerned a threshold question that must be resolved.

Plaintiff, as noted, prevailed on both her §§ 1981–82 and 3612 claims, each of which has related statutory provisions concerning attorney's fees. For §§ 1981–82, § 1988 also of Title 42 allows:

"In any action ... to enforce a provision of sections 1981, 1982 ..., the court ... may allow the prevailing party ... a reasonable attorney's fee ...."

For § 3612, its subsect. (c) states:

"The court ... may award ... reasonable attorney's fees in the case of a prevailing plaintiff: *Provided*, That the ... plaintiff in the opinion of the court is not financially able to assume ... attorney's fees."

(Emphasis in original.)

As is obvious from its emphasized proviso, § 3612(c) presents a narrow avenue to

Special Verdict Form incorporated that pendent cause of action into the § 3612 claim. Given that substantive combining of those statutes, the Court will only refer to §§ 1981–82 and 3612 as the statutory causes of action litigated, although Mrs. Rogers did, indeed, recover under State law as well.

attorney's fees recovery. And, due to her net worth, Mrs. Rogers could likely bear prosecuting expenses, thereby barring § 3612(c) compensation.

Just as obviously, however, § 1988 does not contain § 3612(c)'s restrictive language. Moreover, at least two circuits marking the difference between those statutes have expressly held that, even though precluded in § 3612(c), recovery may be had via § 1988 —when, as here, a plaintiff wins under both §§ 1981–82 and 3612.

The Fifth Circuit in *Woods-Drake v. Lundy*, 667 F.2d 1198, 1204 (5th Cir.1982), said:

> "Plaintiffs have prevailed ... under both 42 U.S.C. § 1982 and ... the Fair Housing Act. They are therefore entitled to benefit from the more liberal provisions of 42 U.S.C. § 1988, which allow recovery of attorneys' fees without consideration of plaintiffs' financial circumstances, as is required by 42 U.S.C. § 3612(c)."

Similarly, the Sixth Circuit in *Price v. Pelka*, 690 F.2d 98, 100 (6th Cir.1982), concluded:

> "The provisions of 42 U.S.C. § 1988 are more liberal than those of 42 U.S.C. § 3612(c)....
>
> "[Plaintiff] prevailed on ... her claims arising under the Fair Housing Act and 42 U.S.C. §§ 1981–82. We hold that she is entitled to benefit from the more liberal provisions of 42 U.S.C. § 1988."

*Cf. Wharton v. Knefel*, 562 F.2d 550, 556 & n. 30 (8th Cir.1977) (Although succeeding under both statutes, plaintiff only sought appellate attorney's fees under § 1988. The Eighth Circuit granted that request remarking that, "A fee award under § 3612(c) would require us to decide whether ... plaintiff is 'financially able' to assume his attorney's fees, a task more appropriate for the district court.").

■ So, based on the caselaw from other circuits, attorney's fees would appear to be available in this action. *See generally* Dugan, *Civil Rights and Freedom of Contract: Employment, Housing and Credit Transactions*, 27 S.D.L.Rev. 181, 192 n. 110 (1982) ("[The Fair Housing Act's] limi-

tation on ... attorney fee awards do[es] not apply where housing discrimination conduct also violates 42 U.S.C. § 1982.") ("Dugan").

Yet, the Second Circuit has not addressed the facial disparity between the two statutory recovery schemes. *Cf. Fort v. White*, 530 F.2d 1113, 1117–19 (2d Cir. 1976) (Since § 1988 had not yet been enacted, plaintiffs could not receive attorney's fees for their § 1982 claim. Still, an award was available under their Fair Housing Act claim and, thus, the district court on remand was to determine whether plaintiffs were able to assume those costs.).

Necessarily, the parties here should have the opportunity to present their positions on that issue, which remains at least arguably open in this jurisdiction. Therefore, they are directed to discuss in memoranda whether attorney's fees are available in this case and, if so, whether reimbursement should be granted. Plaintiff also is to submit the amount sought supported by accompanying itemization. Defendant, of course, may challenge that figure and its underlying cost breakdown.

Plaintiff's papers are due on October 19, 1984. Defendant will respond by October 29, 1984.

### Equitable Remedy

Plaintiff has formally sought an injunction. Both sides have submitted briefs on the fittingness of that equitable remedy. Also, plaintiff has tendered a proposed order delineating the specific relief desired, to which defendant has responded by objecting to some terms and agreeing to others (should the Court deem an injunction merited).

■ The statutes upon which Mrs. Rogers has prevailed permit injunctive relief. Though not literally, the Civil Rights Act of 1866 has been so construed. In *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 414 n. 13, 88 S.Ct. 2186, 2189 n. 13, 20 L.Ed.2d 1189 (1968), the Supreme Court commented:

"The fact that 42 U.S.C. § 1982 is couched in declaratory terms and provides no explicit method of enforcement does not ... prevent a federal court from fashioning an effective equitable remedy."

*See, e.g., Gore v. Turner,* 563 F.2d 159, 162–63 (5th Cir.1977) ("The district court held that defendant ... racially discriminated against [plaintiff] in violation of 42 U.S.C. § 1981 and § 1982 by denying her the same right to lease rental property as ... white citizens.... The [district] court granted an injunction....").

Under the Fair Housing Act, a court is plainly empowered to enter an injunction by 42 U.S.C. § 3612(c):

"The court may grant ... any permanent or temporary injunction ...."

Without disputing that an injunction *can be* mandated, Yellowstone's primary position is that it *should not be*, since liability was incurred for but a single incident. *See* J. Kushner, *Fair Housing*, at 548 (1982) ("Injunctions are most appropriate in pattern and practice litigation and in class action private litigation based on a pattern of activity on the part of the defendant.") (footnotes omitted) ("Kushner").

■ Even so, extensive discrimination as evinced by a pattern and practice or class certification is not an essential foundation to support an injunction. On that point, the Fourth Circuit in *United States v. Hunter,* 459 F.2d 205, 218 n. 17 (4th Cir. 1972), *cert. denied,* 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1972), observed:

"[A] pattern or practice ... is not an indispensable prerequisite .... Relief may be based on a single (unintentional) violation ... when ... a group of persons are denied their statutory rights and the case raises an issue of general public importance."

Later, that same tribunal in *Sandford v. Coleman Realty,* 573 F.2d 173, 178–79 (4th Cir.1978), stated:

"[Plaintiff] centers his challenge ... on [the District Court's] failure to certify ... a class action and to grant injunctive relief .... [I]t was not necessary ... to secure class certification in order to secure ... enlarged injunctive relief, provided ... the facts warranted either individual or class injunctive relief. *[T]he ... rule is that [w]hether plaintiff proceeds as an individual or on a class suit basis, the requested [injunctive] relief generally will benefit not only the claimant but all other persons subject to the practice ... under attack.'* 7 Wright & Miller, *Federal Practice and procedure,* § 1771, pp. 663–664 (1972). Since [this and another plaintiff] could receive the same injunctive relief in their individual action as ... by ... their proposed class action, class certification was unnecessary ... to give the plaintiffs the injunctive relief they requested through class certification, *assuming the facts ... were sufficiently flagrant to support that relief....* [T]he facts [here] present a sufficiently clear and flagrant case of discrimination [and] the District Court committed clear error in failing to grant to [plaintiff] injunctive relief against the further maintenance by the defendant of 'a policy of discrimination against black people seeking ... housing accommodations.' " (Quoting the complaint.)

(Footnotes omitted; emphasis added.) *See also* R. Schwemm, *Housing Discrimination Law,* at 251 (1983) ("The better view ... is that class certification is not a prerequisite to full injunctive relief in a § 3612 case.") (citing *Sandford* ) ("Schwemm"); Kushner, at 555 ("Injunctions may even be issued in the face of only one violation where the court deems it necessary to eliminate any vestige of discrimination.") (footnote omitted).

■ In brief, since—as *Sandford* explained—an injunction will benefit others besides the suing plaintiff, the propriety of imposing that equitable remedy depends on each suit's facts—not on the number of violations or movants involved. The question, rather, is whether "the facts ... were sufficiently flagrant to support that remedy." *Sandford v. Coleman Realty Co.,* 573 F.2d at 178.

As found by the jury, the facts in this case did point to flagrant racial discrimination. The jury, as mentioned, rejected Yellowstone's asserted concern about the origin of Mrs. Rogers' resources. Along that line, the jury rebuffed Yellowstone's protestation that race was not a factor in the application's denial. Other facts—likewise indisputably ascertained by the jury—impel the conclusion that the violation was serious.

To specify, as instructed by the Court on the §§ 1981–82 claim, the jury had to decide whether defendant *intentionally* discriminated against plaintiff.[3] *See* Jury Instructions, at 8. Having returned a verdict for Mrs. Rogers on that cause of action, the jury unmistakably identified discriminatory intent. That finding of purposefulness *then* weighs against Yellowstone *now*. *See generally* Schwemm, at 251 ("Factors to be considered [when deciding whether to enter an injunction] are how intentional or flagrant the defendant's violation was, ...") (footnote omitted).

To be sure, carrying even more weight is the jury's conferral of punitive damages, thereby exhibiting its belief that defendant's misconduct was glaring. *See id.*, at 251 n. 135 ("Most ... cases ... by individual minority homeseekers that have resulted in a permanent injunction have been based on conduct that was flagrant enough to also justify an award of punitive damages.").

More particularly, before granting such damages, the jury was instructed to gauge whether Yellowstone's act was "maliciously or wantonly or oppressively done." Jury Instructions, at 14. In making that award, the jury's appraisal of Yellowstone's misdeed was manifest. *See* Dugan, 27 S.D.L. Rev. at 190 ("An award of punitive damages [in a housing discrimination case] presupposes that the defendant acted with 'conscious and deliberate disregard of the

consequences of his actions.' ") (citation and footnote omitted).

■ In sum, based on these and similar evidentiary findings, the jury assuredly perceived Yellowstone's violation as flagrant. The Court accepts that assessment. Therefore, despite presenting one proven discriminatory act, an injunction is warranted.

That established, the nature of the injunction must next be resolved. Here, the Court's equitable powers are broad:

> "[E]quity gives the trial judge a large degree of discretion in choosing between various possible remedies and in molding the decree to fit particular situations."

Schwemm, at 246 (footnote omitted).

Still, the remedy imposed must be concordant with certain principles to be served in housing litigation. To particularize, the injunction should be fashioned to effectuate

> "[t]he twin goals in housing discrimination cases [which] are to insure that no future violations occur and to remove any lingering effects of past discrimination."

*Gore v. Turner*, 563 F.2d at 165. *See also Marable v. Walker*, 704 F.2d 1219, 1221 (11th Cir.1983) (same); *United States v. Warwick Mobile Homes Estates, Inc.*, 558 F.2d 194, 197 (4th Cir.1977) (same).

Further, the remedy should correspond in degree to the wrong:

> "As in any equity proceeding, the scope of the remedy is determined by the nature and the scope of the legal violation."

*United States v. City of Parma*, 504 F.Supp. 913, 916 (N.D.Ohio 1980), *aff'd in part, rev'd in part*, 661 F.2d 562 (6th Cir. 1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1972, 72 L.Ed.2d 441 (1982) (citing *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971)). *See also*

---

**3.** In contrast, § 3612 requires only a showing that the *effect* of defendant's conduct was discriminatory. *See Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1036 (2d Cir.1979) ("[T]o prove a prima facie case of race discrimination

[under the Fair Housing Act] plaintiffs needed to show only that the action ... had a racially discriminatory effect; they were not required to show that the defendants acted with racially discriminatory motivation.").

Schwemm, at 246 ("[A] federal court is required to tailor the scope of its remedy to fit the nature and extent of the violation ....")

Succinctly stated, then, the equitable relief should be

" 'a special blend of what is necessary, what is fair, and what is workable.' "

*Park View Heights Corp. v. City of Black Jack,* 605 F.2d 1033, 1036 (8th Cir.1979), *cert. denied,* 445 U.S. 905, 100 S.Ct. 1081, 63 L.Ed.2d 321 (1980) (quoting *Lemon v. Kurtzman,* 411 U.S. 192, 200, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973)). *See also United States v. Bob Lawrence Realty, Inc.,* 474 F.2d 115, 127 (5th Cir.1973), *cert. denied,* 414 U.S. 826, 94 S.Ct. 131, 38 L.Ed.2d 59 (1973) ("The District Court correctly exercised its discretion to issue an injunction properly tailored so as to keep interference with [defendant real estate broker's] business at a minimum compatible with full compliance with the law.").

Guided by those special principles, the Court has reviewed plaintiff's proposed order and defendant's response. The Court, additionally, has examined judicial orders in other housing discrimination cases to identify common characteristics for possible use here, if appropriate. *See, e.g., United States v. West Peachtree Tenth Corp.,* 437 F.2d 221, 229–31 (5th Cir.1971); *United States v. Mitchell,* 335 F.Supp. 1004, 1007–08 (N.D.Ga.1971), *aff'd sub nom. United States v. Bob Lawrence Realty, Inc.,* 474 F.2d at 118–19 n. 6; *United States v. Youritan Construction Co.,* 370 F.Supp. 643, 651–54 (N.D.Cal.1973); *Zuch v. Hussey,* 394 F.Supp. 1028, 1055–57 (E.D.Mich. 1975); *United States v. Real Estate One, Inc.,* 433 F.Supp. 1140, 1141–43 (E.D.Mich. 1977); *United States v. Housing Authority,* 504 F.Supp. 716, 733–36 (S.D.Ala.1980); *United States v. City of Parma,* 504 F.Supp. 913, 918–23 (N.D.Ohio 1980), *aff'd in relevant part,* 661 F.2d 562, 576–78.

From that caselaw inspection, the Court has discerned certain recurring directives. To expand, the injunctions rendered by those courts regularly contain two types of overall relief: prohibitive and affirmative.

*See, e.g., United States v. City of Parma,* 661 F.2d 562, 568 ("The 'comprehensive remedial plan' formulated by the court ... contains a general injunction against discrimination in housing ... and a number of affirmative requirements.") (citation omitted). *See generally Marable v. Walker,* 704 F.2d at 1221 ("Once a court finds that a landlord has discriminated against prospective tenants, it may enjoin the landlord from engaging in such practices.... The [Fair Housing] Act also authorizes 'such affirmative action as may be appropriate.' ") (citation omitted).

The prohibitive provisions simply forbid a defendant from disobeying the law. Such admonitions are both broad and specific, *i.e.,* a defendant is not to engage in discriminatory acts generally nor in those acts for which liability has just been ascribed. *See, e.g., United States v. West Peachtree Tenth Corp.,* 437 F.2d at 229 (For misrepresenting to inquiring blacks that there were no vacancies as well as for other discriminatory misdeeds, the landlord was broadly enjoined from "[f]ailing ... to rent ... to any person because of race ... that any [available] dwelling is not available.").

Prohibitions alone, though, may be ineffective. While contempt proceedings, of course, can be invoked since an injunction is a judicial order, a defendant is only being enjoined from doing that which—by law—it could not have done *before* the suit.

Hence, often along with prohibitive provisions, courts have included affirmative terms to arrest the past misconduct and to prevent its non-repetition. *See, e.g., Zuch v. Hussey,* 394 F.Supp. at 1056 ("[Defendants] shall ... implement an affirmative program of compliance ... to insure that ... all housing sold ... will be made available to ... nonwhites on the same basis ... [as] ... to whites ...."); *United States v. West Peachtree Tenth Corp.,* 437 F.2d at 229 ("[D]efendants shall ... implement the following affirmative program to correct the effects of their past discriminatory practices: ....").

Notably, with some consistency in the affirmative sections of the injunctive or-

ders examined, other tribunals have required defendants to take definite steps via education and advertising towards *sustained* lawful conduct. Record keeping, too, has often been mandated, thereby facilitating judicial monitoring of compliance. *See, e.g., United States v. Youritan Construction Co.*, 370 F.Supp. at 652–54 ("[D]efendants shall ... implement an affirmative program of compliance ... to insure that ... all apartments will be available ... to white[s] .... [D]efendants shall ... conduct an educational program .... [D]efendants shall inform the public ... and their customer and clients ... of ... defendants' nondiscriminatory policy .... [D]efendants shall ... make, keep and preserve the following records ....") (footnote omitted).

In this case, plaintiff's proposed order, for the most part, accords with the just-sketched profile of other judicial injunctions. Notwithstanding, the Court regards several of defendant's objections to be well-taken.

For example, Mrs. Rogers requests that Yellowstone notify in writing six named real estate brokers that it is an equal housing opportunity cooperative—while providing them with a copy of the injunction. Yellowstone is willing to inform those brokers of its commitment to open housing but balks at enclosing the injunction, maintaining that there is no good reason for doing so. The Court agrees.

Yellowstone's support of racial equality in housing opportunity is the *positive* message that should be announced. Conversely, drawing public attention to Yellowstone's past *negative* act could well disserve this nation's objective of "open, integrated residential housing patterns." *Otero v. New York City Housing Authority*, 484 F.2d 1122, 1134 (2d Cir.1973). More to the point, extended unnecessary dissemination about defendant's prior discriminatory conduct might discourage prospective minority purchasers from applying out of reluctance to live alongside attitudes perceived to be prejudiced and entrenched.

Also, publicly pillorying Yellowstone goes beyond the facts of this case. Though flagrant, Yellowstone's shown discrimination *was* limited to one violation. And, as has been stressed, "[t]he remedy must ... be proportionate to the wrong ...." Kushner, at 548. In short, Yellowstone's advertising its allegiance to open housing without circulating the injunctive order appropriately serves a progressive purpose without overstepping this suit's factual confines.

In contrast, defendant's position as to other terms is too unyielding, given the regrettable realities of this and other housing discrimination cases. For instance, Yellowstone is unwilling to keep an Applicant Flow Log that denotes an apartment-seeker's race, color or national origin, allegedly because public policy prevents maintenance of such classification-conscious records.

Unfortunately, invidious racial (etc.) classification is the disease at the heart of this type of suit. That is the illness to be attended. And, the only *effective* means of monitoring progress towards health nondiscriminatory conduct is by compiling that classification-conscious data for judicial review.

Yellowstone's point, however, is not without merit. Thus, despite directing that such information be gathered, this Court, as have been other courts when imposing similar record keeping requirements, will be sensitive to what, perhaps, is Yellowstone's real concern. *See, e.g., United States v. Youritan Construction Co.*, 370 F.Supp. at 654 ("The defendant's keeping of racial records for the purpose of complying with this Order shall not be considered discriminatory.").

Lastly, neither side's position as to some provisions is acceptable—the most important being the injunction's duration. Mrs. Rogers proposes three years, which is too long for a suit—again—grounded in one wrongdoing.

Unsurprisingly, Yellowstone asks for a lesser span—one year. That time period, though, is too short for a newly implanted

open housing program to take root. Instead, a two-year duration is best suited for advancement towards the "twin goals" of eradicating the past discrimination and securing future adherence to our nation's equal housing commitment. *Gore v. Turner*, 563 F.2d at 165.

Rather than exhaustive, the foregoing remarks on the caselaw guidance and the parties' positions are only illustrative of the Court's approach in shaping the injunction. The Court, in sum, has intended to fashion tempered relief that is a " 'special blend of what is necessary, what is fair, and what is workable.' " *Park View Heights Corp. v. City of Black Jack*, 605 F.2d at 1036 (quoting *Lemon v. Kurtzman*, 411 U.S. at 200, 93 S.Ct. at 1469).

### Injunctive Order

■ Accordingly, the Court issues the following Injunctive Order:

### A. *Prohibitive Relief*

1. Defendant shall not withhold its consent to the sale or transfer of stock certificates or other evidence of ownership interest in the corporation (hereinafter, an apartment's purchase of sale) because of an applicant's race, color or national origin.

2. Defendant shall not deny a minority applicant the opportunity to purchase an apartment because of unsubstantiated views on that person's finances. For example, unless it can point to a *sound* basis for believing that a minority applicant's income source will negatively affect his/her ability to buy and maintain an apartment, Yellowstone's views on that prospective purchaser's income origin *shall not* be a reason for disapproving the sale.

### B. *Affirmative Relief*

1. Defendant shall provide each shareholder with a copy of this Injunctive Order and shall indicate in the corporate minutes the date of distribution.

2. Defendant shall hold a fair housing seminar at a shareholders' meeting within forty-five days. That seminar may be conducted by plaintiff's counsel or by a qualified representative from the NAACP, the National Urban League or similar organization. If preferring someone other than plaintiff's counsel, Yellowstone shall submit that person's name and background to the Court for approval. Any honorarium for the seminar leader shall be borne by Yellowstone.

3. After all existing supplies are exhausted, defendant's letterhead and other correspondence paper shall be changed to include the statement "An Equal Housing Opportunity Cooperative."

4. On the initial Sunday of each month for this decree's first three months and on the initial Sunday for each four-month period thereafter, defendant shall place an advertisement no smaller than two column inches in the New York Times and the Amsterdam News stating that:

> The Board of Directors of 66–36 Yellowstone Blvd. welcomes applications for the purchase of cooperative apartments from qualified minorities. The Board maintains a list of all vacant apartments as well as those that it knows will soon become available. The Board will provide interested persons with the names and telephone numbers of the sellers of those apartments.

5. In a letter signed by its president, defendant shall notify these real estate brokers that it is an equal housing opportunity cooperative willing to consider all applications without regard to race, color or national origin: Austin Sheppard, Nu-Place, Kraham, Rachmani Real Estate, Lana Realty and Mildred Mann Realty.

6. In the same manner conveying the same message, defendant also shall notify these community organizations: the NAACP, the New York City Chapters of the NAACP, the New York Urban Coalition, the National Urban League, and the New York City Chapters of the National Urban League.

7(a). Defendant shall promulgate a resolution directing its shareholders that, to receive consent for a transfer, the selling

shareholder must notify the Board of his/her desire to sell the apartment.

(b). After being notified, defendant shall then advertise the apartment's availability for four successive Sundays in the New York Times and Amsterdam News. That advertisement shall invite applications from qualified minorities and shall include the statement "An Equal Housing Opportunity Cooperative."

(c). During that advertising period, the selling shareholder may negotiate with all applicants but *shall not* enter into a sales contract until the last advertisement has run.

8. Since it largely solicits objective financial information, defendant shall continue to use its current application form, modified as necessary to gather the additional information required for the Applicant Flow Log, *e.g.*, "applicant's race, color or national origin." (See below.) Notwithstanding the general objectivity of that modified application form, however, if a subjective nonfinancial factor enters *at all* into Yellowstone's decision to reject a minority applicant, that factor must not only have a sound basis but must be plainly stated in the Applicant Flow Log under the heading "reason for rejection."

9. Defendant shall maintain an Applicant Flow Log that—depending on the stage through which each application progresses—shall contain this information: applicant's name, apartment sought, applicant's race, color or national origin, application receipt date, screening committee interview date, results, Board review date, results, purchase date, price and reason for rejection.

Note: Defendant's recording an applicant's race, color or national origin shall be solely for complying with this Injunctive Order and shall not be considered discriminatory.

10. Within seven days of the denial date, defendant shall notify each rejected minority applicant that his/her application was disapproved and the "reason for rejec-

tion" as stated under that heading in the Applicant Flow Log.

11. Defendant shall maintain all records required to be kept by this Injunctive Order.

12. In no less than fifty but no more than sixty days, defendant shall submit a report to the Court addressing this Injunctive Order's implementation. That report is to be accompanied with the appropriate documentation including a copy of the Applicant Flow Log. After review, if the Court considers compliance satisfactory, defendant shall be permitted to tender future reports at 120-day intervals thereafter.

13. Defendant shall provide plaintiff with a copy of any report submitted to the Court.

## C. *Other Relief*

1. Disputes or motions regarding this Injunctive Order are to be brought before the Court, which may in its discretion refer the matter to a United States Magistrate.

2. This Injunctive Order shall be effective for two years from this date. During that period, the Court shall retain jurisdiction.

3. This Injunctive Order's terms shall be liberally construed to accord with the equal opportunity housing mandates of 42 U.S.C. §§ 1981–82 and 42 U.S.C. § 3612.

SO ORDERED.