Cecil **JONES**, Plaintiff-Appellee
Cross-Appellant,

v.

**WESTERN GEOPHYSICAL COMPANY**,
Defendant-Appellant Cross-Appellee.

No. 84–2049.

United States Court of Appeals,
Fifth Circuit.

June 3, 1985.

A. Martin Wickliff, Jr., Houston, Tex., for appellant.

Anthony P. Griffin, Yvonne M. Williams, Galveston, Tex., for appellee.

Before GARZA, POLITZ and DAVIS, Circuit Judges.

GARZA, Circuit Judge:

Cecil Jones, a black male, has maintained that his 1978 termination from the Western Geophysical Company's Galveston, Texas, plant was racially motivated and therefore in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq.*, as well as the Civil Rights Act of 1866, 42 U.S.C. Section 1981. Initially, the district court entered summary judgment in favor of Western Geophysical and against Jones, holding that since Jones was replaced by another black male after his discharge, Jones could not establish a prima facie case of racial discrimination. A panel of this court reversed that judgment and remanded the cause for trial. 669 F.2d 280 (5th Cir.1982).

At the trial, the court, sitting without a jury, found that Jones's discharge had violated both Title VII and Section 1981 and entered judgment in his favor. However, the court below declined to award Jones punitive damages under Section 1981. Western Geophysical appeals from the district court's judgment against it, and Jones cross-appeals from the district court's refusal to grant him punitive damages. For the reasons stated below, and with one minor modification as to damages, we affirm the judgment of the district court.

I

 Jones was employed by Western Geophysical from December 26, 1973, until his termination on November 2, 1978. During his tenure, Jones received numerous pay raises. Western Geophysical maintained at trial and still maintains that those raises were "across-the-board" and that Jones had always been a very slow worker. Nonetheless, on the basis of ample evidence, the district court found that some of the raises were, in fact, selective as to Jones. From this evidence, the court below properly concluded that Jones had performed satisfactorily during his employment at Western Geophysical.

During mid-1978, the period just prior to Jones's termination, race relations at the Galveston plant, which were never good, deteriorated. Racist graffiti appeared on the restroom walls with greater frequency. In the summer of that year, while attending a company-sponsored cardiopulmonary resuscitation (CPR) training session, an unidentified mid-level supervisor stated in

very offensive terms that he would not perform CPR on a black employee. This remark was reported rapidly throughout the plant and upset black employees greatly.

In view of the increased racial tension at the plant, a group of black employees requested a meeting with Western Geophysical management. The company agreed, and in July or August of 1978, a meeting was held between Western Geophysical management and eight black employees, including Jones. Although one positive result of the meeting was visible when plant restroom walls were painted to cover the racist graffiti, Western Geophysical's other subsequent actions were not so worthy of praise. Five of the eight employees who attended the meeting soon received notices of criticism, typically the first step in the termination process. In the case of Jones, his notice of criticism dated September 28, 1978, was the first such notice of his four and one-half year tenure at Western Geophysical.

Jones's September notice of criticism alleged that he was the "slowest of the 257 company employees." Jones's supervisor, Sid Johnson, set out to verify Jones's slow work pace. Johnson asked three other employees how much time should be necessary to clean column guides on vibrator trucks. These employees' responses varied from 45 minutes to one and a half hours. Johnson then assigned the task to Jones. When Johnson reviewed Jones's time sheets for the task, he found that Jones had taken too long to perform the job, although how much time Jones actually required was never credibly established. In any event, Jones was immediately terminated.

## II

From the facts as outlined above, the district court made the ultimate finding that Jones had been terminated on account of his race. Western Geophysical maintains that the district court based this determination on two interrelated misunderstandings of the law. Specifically, Western Geophysical maintains that the district court improperly ignored subjective evaluations by Jones's supervisors of his work habits. Moreover, Western Geophysical contends that the district court erroneously placed the burden on the company to *prove* a legitimate, nondiscriminatory reason for Jones's termination. According to Western Geophysical, the evidence presented was sufficient to meet its burden to *articulate* a legitimate, nondiscriminatory reason for Jones's termination as required by the second step of the three-step analysis of *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Since Western Geophysical articulated such a legitimate reason, it argues, the burden shifted to Jones to show that the proffered reason was pretextual. As Jones did not come forward with any such evidence, Western Geophysical argues that Jones failed to carry his burden of proof.

Western Geophysical's argument is flawed in two respects. First, it makes inaccurate suppositions as to what the district court actually did. The district court did not ignore subjective evidence of Jones's job performance; it merely completely discredited it in view of other, more tangible evidence that Jones was a good employee.[1] Nor was this a case in which the district court held that, once the plain-

1. The relevant part of Finding of Fact Seven states as follows:

The notice of criticism of September 28 was the first that Jones had received during his 4½ years of employment at the company. The notice stated was that he was the "slowest of the 257 company employees." This was a purely subjective appraisal. It seems his work was not of the kind that could be quantified objectively, or at least the company had not compiled and could not produce records

substantiating the subjective assessment of the plaintiff's [Jones's] job productivity.

The district court was justified in giving no weight to the proffered evidence that Jones was slow in view of the timing of this first notice of criticism. Western Geophysical's argument that Jones's speed became an issue only after a 1978 upturn in business was obviously simply not believed by the district court.

*See also* note 2, *infra*.

tiff had made a prima facie case, the burden of proof shifted to the defendant to show a legitimate, nondiscriminatory reason; such a holding would obviously conflict with *Burdine* decision. *See* 101 S.Ct. at 1095. It is true that in Conclusion of Law Six the district court states that Western Geophysical's proffered legitimate reason is "unsubstantiated by the preponderance of evidence," an admittedly unfortunate choice of language. Nonetheless, when all the related Conclusions of Law are read together, it becomes clear that the district court correctly applied the burden of proof.[2] Indeed, in Conclusion of Law Six, the district court explicitly states that the "burden of persuasion does not shift to the defendant at any time." Read in context, Conclusion of Law Six states only that the district court believed Jones's characterization of his termination rather than Western Geophysical's.

■ Second, Western Geophysical's argument is flawed in that it misunderstands the proper role of the *Burdine* three-step analysis. Once a plaintiff presents his prima facie case and the defendant responds with some evidence of a legitimate, nondiscriminatory reason, the *Burdine* analysis is no longer relevant. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). The proper inquiry then becomes whether the defendant intentionally discriminated against the plaintiff. 103 S.Ct. at 1482. In determining whether the plaintiff has carried his burden, the district court is to look at all the plaintiff's evidence, whether introduced as part of the prima facie case or as part of an attempt to show that the defendant's proffered reason is unworthy of belief. *Burdine*, 101 S.Ct. at 1095. *Accord Lyford v. Schilling*, 750 F.2d 1341 (5th Cir.1985).

In the case of Jones, the court below examined all the evidence and determined that Jones was discharged because he is black. That finding cannot be disturbed unless it is clearly erroneous. *Anderson v. Bessemer City*, — U.S. —, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Pullman-Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). The evidence here clearly supports the district court's finding of racial discrimination.

### III

■ Western Geophysical next argues that the district court made several errors in evidentiary rulings during the trial. First, Western Geophysical argues that the district court erred in allowing Toby James to testify at trial when Jones had earlier failed to produce James for deposition. Moreover, James was allowed to testify as to his observations of Jones's work habits,

---

2. The relevant Conclusions of Law read as follows:

> 5. Once a plaintiff establishes a prima facie case, the burden shifts to the employer to rebut the adverse inference by articulating "some legitimate nondiscriminatory reason for the employee's rejection," or refuting the factual basis of plaintiff's allegations. If the employer rebuts plaintiff's case, the plaintiff is given the opportunity to show that the proffered evidence is merely a pretext for discrimination. The burden of persuasion does not shift to the defendant at any time.
>
> In proffering a legitimate nondiscriminatory reason for the claimant's discharge, an employer may not rely on employee evaluations which are wholly subjective or based on unarticulated standards. The trier of fact may infer from the defendant's behavior and the circumstances that defendant's actions were racially motivated. Derogatory statements made by supervisory personnel regarding black employees are relevant to show conditions of employment and discriminatory motive.
>
> 6. The Court finds that plaintiff has established a prima facie case of discrimination. Plaintiff, a black, is a member of a protected group. His past job performance, as indicated by his personnel records and job progression, reflects plaintiff's qualifications. Defendant's allegation that plaintiff was reprimanded and discharged for his failure to meet production requirements is unsubstantiated by the preponderance of evidence. Plaintiff was reprimanded and finally discharged because he was black and because he participated in the grievance meeting.
>
> 7. The Court concludes that plaintiff has proved his claims under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e–5, and accordingly finds for the plaintiff and against the defendant. (Citations omitted.)

in spite of the fact that he had never either supervised or worked closely with Jones; Western Geophysical argues that this testimony was therefore both irrelevant and immaterial. Finally, the court below allowed John Johnson, Jones's supervisor at his new job, to testify that Jones was not a slow worker, in spite of the fact that Jones's new work as a waiter was entirely different from the industrial work that Jones performed for Western Geophysical.

With respect to these contentions, we need only say that Western Geophysical has failed to point to any demonstrable prejudice that it has suffered as a result of these rulings. Indeed, the district court does not appear to place any substantial reliance on any of this testimony. Therefore, even assuming that the district court erred in each of these rulings, a highly questionable assumption, any error committed was clearly harmless.

### IV

By way of cross-appeal, Jones argues that the court below erred in failing to award him punitive damages. Jones contends that he has shown that Western Geophysical failed to take corrective steps to remedy the racially-charged atmosphere at the plant, that Western Geophysical "set up" Jones with respect to the column guides test, that it tried to avoid a lawsuit by deceitfully claiming to have replaced Jones with another black person, and finally, that it continued to display racial animus by its conduct during discovery and the trial itself.

 The general rule in this circuit is that punitive damages may be awarded only against a Section 1981 defendant who "has acted willfully and with gross disregard for the plaintiff's rights." *Gore v. Turner*, 563 F.2d 159, 164 (5th Cir.1977). Other cases have characterized the requirement as one of "malice." *Claiborne v. Illinois Central Railroad*, 583 F.2d 143, 154 (5th Cir.1978), *cert. denied*, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 303 (1979). In any event, the determination as to the propriety of punitive damages is normally within the sound discretion of the district court. *Claiborne*, 583 F.2d at 154.

 In determining whether punitive damages are appropriate, the district court should evaluate "the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent." *Gore*, 563 F.2d at 164 (quoting *Lee v. Southern Home Sites Corp.*, 429 F.2d 290, 294 (5th Cir.1970)). While racial discrimination is an abhorrent practice, the conduct of Western Geophysical in this case was such that the district court did not abuse its discretion in failing to award punitive damages. First, there was evidence that the company was taking steps to eliminate racial discrimination. Second, the evidence in the district court was at times quite ambiguous and did not compel the conclusion that Western Geophysical had behaved maliciously. The proper weighing of the *Gore* factors is normally left to the district court; here, the court below did not abuse that discretion.

### V

The district court failed in its judgment to award post-judgment interest on the attorney's fee award that it granted Jones. Western Geophysical now concedes that this was error. Accordingly, the judgment of the district court is hereby modified to provide for interest at the lawful rate on the attorney's fee award from the date of the judgment until paid. In all other respects, the judgment of the district court is affirmed.

AFFIRMED IN PART; MODIFIED IN PART.